**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 97-KA-00873-SCT**

*WILLIAM JOSEPH O'HALLORAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/96 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. MUSSELMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-1/14/99 |

**BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. At issue is William Joseph O'Halloran's appeal of his conviction for the February 1994 murder of Kenneth Ray Tolbert. O'Halloran argues several items of error in the handling of his case, all of which are without merit. We affirm.

## STATEMENT OF THE CASE

¶2. On October 13, 1994, William Joseph O'Halloran was indicted by the grand jury of Harrison County for the murder of Kenneth Ray Tolbert on or about February 24, 1994. O'Halloran pled not guilty and a July 10, 1995, trial was set on January 13, 1995. O'Halloran was originally represented solely by Joseph P. Gautier, but, on May 17, 1995, Donald Smith was added as Co-Counsel. Several continuances were sought by and granted to counsel Smith. A suppression hearing was held March 11, 1996. On March 13, the jury found O'Halloran guilty of murder. O'Halloran was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. O'Halloran's Motion for Judgment Notwithstanding the Verdict or in the Alternative a Motion for a New Trial, which was filed April 16, 1996, was taken under advisement and subsequently denied June 13, 1997.

¶3. Approximately April 14, 1997, O'Halloran filed a complaint against attorney Smith with the Mississippi State Bar Association. On May 9, Smith sought and received leave to withdraw as O'Halloran's counsel citing conflict of interest due to the complaint and relative Bar action. O'Halloran filed a Notice of Appeal on July 2, challenging his conviction of guilt and the denial of the Motion for New Trial. On appeal,

O'Halloran claims:

I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL;

II. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT;

III. INSUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE JURORS COULD HAVE FOUND THE APPELLANT GUILTY OF THE CHARGE OF MURDER;

IV. THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A MOTION FOR A NEW TRIAL.

## STATEMENT OF THE FACTS

¶4. On February 23 or 24, 1994, Kenneth Tolbert was searching for a place to stay when Joey Brewer agreed to keep him. Tolbert went to get, then dropped off a couch and clothes. Brewer did not see him again. On March 4, 1994, Alicia Anderson of the Biloxi Police Department Records Division took a missing person report filed by D.C. Tolbert regarding the missing status of her husband Kenneth Tolbert. D.C. Tolbert reported her last contact with Kenneth was February 24, 1994. Further, D.C. requested the media not be advised of the missing person report.

¶5. March 20, 1994, a couple of people notified the Sheriff's Department that they had discovered what they thought was a body wrapped in blue packaging protruding from the water near Hurricane Bridge off Highway 15. Upon analysis of dental records, the body was identified as that of Kenneth Tolbert. Expert Paul McGarry, a forensic pathologist, testified that the autopsy diagnosed four gunshot wounds from which Tolbert died, one of which was a contact wound to the head.

¶6. While investigating Tolbert's death, Inspector Robert Burriss of the Biloxi Police Department visited the Tolberts' Biloxi home. Mrs. Tolbert directed Burriss's attention to the stove. There had been additions to the stove effected by Mrs. Tolbert such that the panel on which the handles are located at the front of the stove was newer than the rest of the stove. A lead projectile was found in the stove top. During the investigation, Investigator LaBlanc of the Biloxi Police Department also discovered that O'Halloran had purchased a .9 MM handgun prior to Tolbert's death. In his statement, O'Halloran mentioned that the day of the shooting, he placed the gun on the kitchen counter.

¶7. Further, the investigation yielded that O'Halloran and Tolbert's widow transported Tolbert's body to one location. Then, the very night of the murder, Mrs. Tolbert apparently told others of the body's location, such that those others likely moved the body to the river. O'Halloran was not present when Tolbert's body was deposited in the river.

¶8. O'Halloran was arrested at 10:00 p.m. on March 23, 1994. At 11:30 p.m. the same evening, Investigator Calvanese took a taped statement from O'Halloran. In that taped statement, O'Halloran was charged with murder and admitted shooting Kenneth Tolbert, regarding which he stated "[i]t [the shooting] happened so fast." O'Halloran also admitted he had a record of drinking and maintained a high tolerance.

## ARGUMENTS AND DISCUSSION OF THE LAW

## I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

¶9. When faced with a claim of ineffective assistance of counsel, this Court employs the two-prong analysis of *Strickland v. Washington*, 466 U.S. 668 (1984),focusing on (1) whether counsel's performance was deficient, and if so, (2) whether the deficient performance was prejudicial to the defendant. *See Strickland*, 466 U.S. at 687-96; *Knight v. State*, 577 So. 2d 392, 394 (Miss. 1991); *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990); *Alexander v. State,* 503 So. 2d 235, 240 (Miss. 1987); *Lambert v. State*, 462 So. 2d 308, 316 (Miss. 1984); *and Thames v. State*, 454 So. 2d 486, 487 (Miss. 1984). The burden to demonstrate both prongs is on the defendant, whom faces a strong but rebuttable presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance. *McQuarter*, 574 So. 2d at 687. There is no constitutional right to errorless assistance of counsel. *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996). Hence, this Court employs the totality of the circumstances to ascertain whether counsel's performance was both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988); *Read v. State*, 430 So. 2d 832, 839 (Miss. 1983). In this Court, "[j]udicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 689; *Rushing v. State*, 711 So. 2d 450, 457 (Miss. 1998). Hence, solely where there is a reasonable probability that without counsel's errors the outcome of the trial would have been different will this Court find ineffective representation. *Reed v. State*, 536 So. 2d 1336, 1339 (Miss. 1988); *and Dickey v. State*, 662 So. 2d 1106, 1109 (Miss. 1995).

¶10. O'Halloran first argues that trial counsel dedicated insufficient time by spending only 39.70 hours on the case from May 17, 1995 to the date of verdict and sentencing. Yet, O'Halloran fails to consider that Attorney Joseph Gautier worked on the case prior to and during Attorney Don Smith's appointment as co-counsel. Further, Gautier sought Smith's appointment as co-counsel, thus displaying endeavor to put multiple legal minds to work for the best interests of O'Halloran. Such behavior is diligent and foresightful, not deficient.

¶11. O'Halloran next argues that counsel was ineffective in its treatment of the cause of death sub-issue. Defense counsel did not cross-examine Dr. McGarry regarding whether the contact wound was the fatal shot. Further, counsel neither called witnesses to establish the height of Ken Tolbert or O'Halloran nor to testify to the trajectories of the different bullets and relative shooting positions. Yet, there is no error. The contact bullet in itself is fatal. Once a party chooses to shoot the victim with the muzzle against the victim's forehead, it matters not which bullet was fired first. Intent is evident. As to the heights of Tolbert and O'Halloran, those were available to the jury in exhibits S-2, O'Halloran's Personal History/Interview Log, and S-4, Tolbert's Missing Person Report. Regarding the non-attainment of trajectories, defense counsel did what they could. It is only reasonable they would fear attaining prejudicial information. If they deemed the likelihood of attaining adverse information to be greater than the attainment of positive information, then they were making the trial strategy decisions required of counsel. A reasoned and rational trial strategy decision may fail, but it is not ineffective counseling.

¶12. O'Halloran next argues that defense counsel was ineffective in its failure to produce ballistics evidence as to the caliber of the bullets. Given O'Halloran's statement that he shot Tolbert with a .9 MM gun, defense counsel wisely served their client because research would have likely prejudiced their client.

¶13. O'Halloran also argues that counsel was ineffective in failing to object to the prosecution's closing argument remark that O'Halloran admitted to "murder," whereas he actually admitted to nothing more than

"shooting" Tolbert. While such negligence on the part of defense counsel is deficient, it does not rise to the level of prejudicial because of the weight of evidence against O'Halloran. His statement coupled with the forensic testimony is quite sufficient for the jury to have reasonably made the finding it did.

¶14. As to the use of the term "murder," O'Halloran further argues that he was prejudiced by defense counsels' failure to object under the case of *Griffin v. State*, 557 So. 2d 542 (Miss. 1990). In *Griffin*, the prosecution stated that "there's one man alive today who can tell you what happened, and I agree with that. There is one person who could tell you what happened and we have--we have a statement--we have a statement from him." *See id.* at 552. The Court held that the prosecution's argument was an impermissible reference to defendant's failure to take the stand. *Id.* The instant case is distinguished from *Griffin* because the prosecution simply refers to O'Halloran's confession rather than implying the one man who can clarify things chooses not to do so.

¶15. O'Halloran next argues that defense counsel erred in not ordering him to undergo a psychological examination. If counsel believed such an examination would have been useful, they likely would have ordered defendant to undergo it. It would indeed be unreasonable not to so advise. Hence, given counsels' decision not to order a psychological examination, one must reason that counsel deemed a psychological examination would likely be prejudicial to their client in the context of his case.

¶16. O'Halloran finally argues that counsel should have called character witnesses in his defense. However, O'Halloran fails to identify any such witnesses for this Court. He does not show that there were available witnesses to testify to the history of violence between the Tolberts, decedent's reputation for violence, or O'Halloran's reputation in the community for peacefulness. Indeed, O'Halloran entirely fails to bring a case of reversible error. Trial counsel were not ineffective in their representation of O'Halloran.

## II. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT

¶17. O'Halloran argues that his statement should have been suppressed because he did not freely and voluntarily provide that statement given that he was intoxicated at the time of interrogation. This Court's ambit of review is firmly established and defined when the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant. *Morgan v. State*, 681 So. 2d 82, 87 (Miss. 1996). When the trial court has overruled a motion to suppress a defendant's confession, we will reverse the trial court's decision only if the trial court's ruling is manifest error or contrary to the overwhelming weight of the evidence. *McGowan v. State*, 706 So. 2d 231, 235 (Miss. 1997). In other words, this Court will not reverse a trial court finding that a confession was voluntary and is admissible as long as that trial court applies the correct principles of law and the finding is factually supported by the evidence. *See Greenlee v. State*, No. 97-KA-00507-SCT, 1998 WL 319209, at *8 (Miss. June18, 1998) (*citing Haymer v. State*, 613 So. 2d 837, 839 (Miss. 1993)).

¶18. The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances. *Gavin v. State*, 473 So. 2d 952, 954 (Miss. 1985); *Stevens v. State*, 458 So. 2d 726, 729 (Miss. 1984). Further, where there is conflicting evidence on a confession's admissibility, this Court will not disturb the court's findings "unless it appears clearly contrary to the overwhelming weight of the evidence." *Wiley v. State*, 465 So. 2d 318, 320 (Miss. 1985). No one factor is dispositive in the totality of circumstances test. *Johnson v. State*, 511 So. 2d 1360, 1365 (Miss. 1987). "Indeed, [i]ntoxication or sickness does not automatically render a confession involuntary. The

admissibility of a confession depends upon the degree of intoxication." *Id.* In *Kemp v. State*, 352 So. 2d 446, 448 (Miss. 1977), law officers testified that the defendant had been drinking heavily but that he was in control of his faculties, justifying admission of the confession. Other cases hold that intoxication must produce "mania" to be a defense. *See State v. Williams*, 208 So. 2d 172 (Miss. 1968). In *Moore v. State*, 237 So. 2d 844, 849 (Miss. 1970), the court decided there was ample evidence to justify the finding that the defendant, although intoxicated, was in full command of his faculties, that his intoxication was less than mania, that he fully understood and appreciated what he was saying, and that his statements were free and voluntary. *See id.*

¶19. On March 23, 1994, O'Halloran was arrested at 10:00 p.m. and gave a statement at approximately 11:30 p.m. Investigator Calvanese of the Harrison County Sheriff's Department testified in the suppression hearing that O'Halloran, at the time of the statements, did not appear to have been drinking nor did he smell of intoxicants. Thus, Investigator Calvanese deemed it unnecessary to ask O'Halloran if he had consumed any alcohol that day and regarded O'Halloran's statement as voluntary. Investigator LaBlanc of the Biloxi Police Department testified at the hearing that O'Halloran did not appear impaired by or under the influence of any intoxicants at the time of the statement. Investigator LaBlanc also stated that while it is Biloxi Police Department standard procedure to ask the last time the accused has consumed alcohol and, if so, how much, Calvanese did not have the Biloxi Police Department forms and was acting pursuant to the Harrison County questioning procedure. Inspector Burriss of the Biloxi Police Department testified that he fingerprinted and photographed O'Halloran prior to O'Halloran's statement. During this time, Burriss detected neither intoxicants on nor intoxication of O'Halloran.

¶20. Applying law to the facts at hand, there is no reversible error. Indeed, the testimony of the law enforcement officers demonstrates that O'Halloran was not impaired by intoxicants. Hence, there is no evidence that the trial court's ruling is contrary to the overwhelming weight of the evidence.

### III. INSUFFICIENT EVIDENCE EXISTS FROM WHICH REASONABLE JURORS COULD HAVE FOUND THE APPELLANT GUILTY OF THE CHARGE OF MURDER

¶21. The proper standard for evaluating a challenge of insufficient evidence to support a conviction is settled. Indeed, "[w]hen, on appeal, one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited." *Carr v. State*, 655 So. 2d 824, 837 (Miss. 1995) (quoting Roberson v. State, 595 So. 2d 1310, 1318 (Miss. 1992)). We must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the prosecution's case--in the light most favorable to the verdict. *Cooper v. State*, 639 So. 2d 1320, 1324 (Miss. 1994); *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986). Credible evidence consistent with the guilt must be accepted as true. *Spikes v. State*, 302 So. 2d 250, 251 (Miss. 1974). Matters regarding the weight and credibility to be accorded the evidence are for the jury's resolution. *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984). A case requires reversal and rendering if the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty. *Carr*, 655 So. 2d at 837; *see also Cooper*, 639 So. 2d at 1324. On the other hand, if there is in the record substantial evidence of such quality and weight that, remaining cognizant of the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. *Carr*, 655 So. 2d at 837.

¶22. In the instant case, the jury was armed with O'Halloran's self-incriminating statement as well as expert testimony of an inherently intentional contact wound. Given such incriminating evidence of action and intent, a jury of reasonable persons could have and did find O'Halloran guilty. There is no error.

### IV. THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A MOTION FOR A NEW TRIAL

¶23. A "motion for judgment of acquittal notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty. . . . It asks the court to hold, as a matter of law, that the verdict may not stand and that the defendant must be finally discharged." *Parker v. State*, 484 So. 2d 1033, 1036 (Miss. 1986) (*quoting May v. State*, 460 So. 2d 778, 780-81 (Miss. 1984)). Where a defendant has moved for jnov, the trial must consider all of the evidence which supports the non-moving party's casehere, in a light most favorable to the state. *Id.* The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Gray v. State*, 549 So. 2d 1316, 1319 (Miss. 1989). In *May* we stated:

> If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motionthat is, evidence of such quality and weight that having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusionsthe motion should be denied.

*May*, 460 So. 2d at 781 (citation omitted).

¶24. In this case, there is no evidence that a reasonable jury could not have found O'Halloran guilty beyond a reasonable doubt; thus, the motion must be denied. As stated earlier, O'Halloran's statement was properly admitted. Further, the substance of the statement coupled with testimony renders the motion for jnov properly denied.

¶25. Nonetheless, as stated in *Spradlin v. Smith*, 494 So. 2d 354 (Miss. 1986):

> [A]n entirely different burden applies to the granting of new trials than to judgments notwithstanding the verdict.
>
> . . . .
>
> . . . [When] all the testimony has been heard and all the arguments delivered and the verdict returned, if, upon a completed view of the entire case, the trial judge is then of the opinion that the verdict is against the overwhelming weight, or clearly against the great preponderance, of the evidence, his duty is, upon a motion for a new trial, to set aside the verdict and grant a new trial. In the latter respect, and to the extent mentioned, the trial judge has a responsible role in the final determination of the issue upon the facts, and his duty of superintendence in that regard is one of his constitutional obligations.

*Id.* at 356-57 (*quoting Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 656 (Miss. 1975)).

¶26. In this case, motion for a new trial was properly denied because, as stated above, there is nothing to

render the verdict against the overwhelming weight of the evidence. The statement and testimony at issue in this case are sufficient evidence to warrant a verdict of guilty. Further, without merit is O'Halloran's previously discussed argument that the prosecution, in its closing, impermissibly commented about O'Halloran's failure to testify. The verdict is not against the overwhelming weight of the evidence.

## CONCLUSION

¶27. There is no evidence of ineffective assistance of counsel. O'Halloran's motion to suppress the statement was properly denied by the trial court. The evidence was sufficient for a reasonable juror to find the appellant guilty of the charge of murder. The trial court did not err in not granting the Motion for JNOV or in the Alternative a Motion for a New Trial.

¶28. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**