GRIFFIS, J„
for the Court.
¶ 1. Thomas Brown appeals his conviction from the Desoto County Circuit Court of one count of fondling a child under the age of eighteen. The trial court sentenced Thomas to serve fifteen years in the custody of the Mississippi Department of Corrections, and he was ordered to pay a $1,000 fine to the Mississippi Children’s Trust Fund. Thomas argues that the trial court erred when it denied his motion: (1) to dismiss the indictment due to lack of specificity, (2) to suppress his written confession, and (8) for a new trial.
FACTS
¶ 2. On January 12, 2005, the Horn Lake Police Department arrested Thomas, who was thirty-four-years-old. After Thomas arrived at the police station, he waited approximately two hours before Detective Michael Callender and Detective Josh Za-charias began an interrogation. Thomas initialed and signed a Miranda waiver at the beginning of the interrogation. During the interrogation, Thomas confessed to fondling a minor child, Jill,[1] after Detective Zacharias told him that a black light test conducted by the police revealed numerous semen stains within the house where Thomas was staying. Detective Zacharias wrote Thomas’s confession, and Thomas initialed and signed it.
¶ 3. During his suppression hearing,[2] Thomas stated that, because he was drunk during the interrogation, he did not remember the interrogation, waiving his rights, or confessing to fondling. Thomas also stated that he did not understand anything the detectives told him or handed him to read during the interrogation because he cannot read or write. Detective Zacharias and Detective Callender both testified, however, that Thomas appeared sober, alert, and did not smell of alcohol during the interrogation. Also, they stated that Detective Callender explained the Miranda waiver form and the confession to Thomas. Furthermore, they believed that Thomas understood both documents when he signed them.
¶ 4. After voire dire, the State moved to amend the time-period for the allegation in the indictment from a span of ten years to a span of five years. Thomas objected because he believed that both the old and the new span of time proposed in the amendment lacked specificity. The court granted the State’s request for an amendment ora tenus. The court then characterized Thomas’s objection as a motion ore tenus to dismiss the indictment and denied this motion.
¶ 5. During the trial, Jill testified for the State. She testified that she would visit and stay with Thomas’s mother, Pamela Brown. Thomas lived with Pamela at this time and helped take care of her because she was very sick. Jill said she would sleep on a pallet next to Pamela’s bed, and Thomas would sleep at the foot of Pamela’s bed. Jill stated that she would wake up during the night and find Thomas caressing her feet while he masturbated. Jill initially said this activity began when she was eight, but she quickly changed this testimony and said that she was actually thirteen when Thomas started touching her.
¶ 6. After Pamela died, Thomas moved into Jill’s home because Jill’s stepfather and Thomas are brothers. Jill testified *1062 that Thomas continued fondling her feet and other parts of her body whenever her parents were not around. She said that Thomas’s fondling ended when she was sixteen because she threatened to report Thomas’s foot fondling. On cross examination, Jill admitted that she told the Mississippi Department of Human Services (“DHS”) that the fondling did not happen, but she testified that she said this because she was afraid the authorities would take her brothers and sisters away from her mother.
¶ 7. Thomas’s sisters, Viola Shanks and Vera Sanders, testified for the defense. Viola testified that Thomas lived with her after he was arrested for fondling. She said that Jill would come to her house when Thomas was present and that she did not appear to be scared of Thomas. Also, Viola said that Jill and her boyfriend wanted to stay at her house for a period of time even though Thomas lived there. Furthermore, Viola said that Jill told her that Thomas did not fondle her.
¶ 8. Vera also said that Jill did not seem scared when she was around Thomas. Furthermore, Vera told Jill that she did not believe that Jill should have implicated Thomas for fondling. Vera said that Jill replied that “this wasn’t her idea.” Neither, Viola nor Vera reported these statements to the police or the State.
¶ 9. Thomas was the last witness for the defense. He denied all of Jill’s allegations against him. He said that he would never sleep in the same room as Jill and his mother because he had his own room. Also, he said that he liked to watch television late at night. Therefore, he could not sleep in his mother’s room because the television’s noise would keep her awake. Thomas repeated his testimony from his hearing that he did not confess because he was drunk during his interrogation and that he cannot read or write.
ANALYSIS

I. Sufficiency of the indictment

¶ 10. Uniform Circuit and County Court Rule 7.06 requires that an indictment “fully notify the defendant of the nature and cause of the accusation.” This rule also requires that an indictment include, among other things, “[t]he date, and if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient....” URCCC 7.06. Furthermore, we have held:
[t]he purpose of an indictment is to inform the criminal defendant “with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense and to enable him to effectively assert his constitutional right against double jeopardy in the event of a future prosecution for the same offense.”
Baker v. State, 930 So.2d 399, 404(¶8) (Miss.Ct.App.2005) (citing Moses v. State, 795 So.2d 569, 571(¶ 13) (Miss.Ct.App.2001) (citing U.S. v. Gordon, 780 F.2d 1165, 1169 (5th Cir.1986))). With these requirements in mind, we now address Thomas’s first argument.
¶ 11. Thomas argues that the trial court erred when it did not dismiss his indictment. He says that the indictment, as amended, lacked specificity because it alleged numerous incidents of fondling occurred on or between January 1, 1999 and January 31, 2004. Also, he argues that the original indictment should have been dismissed because it alleged numerous incidents of fondling occurred on or between January 1, 1994 and January 31, 2004. Thomas believes that he was unable to prepare a proper defense because the in- *1063 dietment did not sufficiently inform him of the dates on which the crimes were supposed to have occurred. Thus, he believes that the indictment’s lack of specific dates was prejudicial to his defense.
¶ 12. Thomas relies on the case of Moses v. State, 795 So.2d 569 (Miss.Ct.App. 2001). He argues that this case is similar to Moses because both cases involved indictments in which the alleged criminal misconduct occurred over a span of years. Id. at 570(¶4). Further, Thomas argues that, like Moses, the State in this case had knowledge that would have shortened the time span alleged in the indictment. Id. at 572(¶ 16). Thomas concludes by saying that we should follow the precedent in Moses and reverse the trial court by dismissing the indictment. Id. at 571-72 (¶¶ 13-18).
¶ 13. In Moses, this Court stated, “[t]o attempt to charge multiple separate felonies by using identical language for each crime, including an identical span of time that the crimes were alleged to have occurred, fails woefully to fulfill the fundamental purpose of an indictment.” Id. at 572(¶ 17). Unlike Moses, Thomas is not charged with multiple separate felonies in an indictment that uses identical language for each crime. Id. Also, the indictment in Moses had “[fjifteen counts [that] spanned thirty-nine months, and four counts had no reference to time.” Id. at 570. After Thomas’s attorney had the indictment severed, Thomas was tried for only one count of fondling. Furthermore, in Moses, “the State was aware of information that would have easily permitted it to provide substantially shortened ranges of dates for each offense.... ” Id. 572. In this case, the State did not discover that the indictment should be amended until the day before trial. The prosecutor on the day prior to trial interviewed Jill and discovered that Jill’s accusations against Thomas only constituted fondling from 1999 to 2004 and not 1994 to 2004. Thus, we find that Moses is distinguishable from the present case, and Thomas’s reliance on Moses is misplaced.
¶ 14. Our supreme court has held, “a specific date in a child sexual abuse case is not required so long as the defendant is ‘fully and fairly advised of the charge against him.’ ” Eakes v. State, 665 So.2d 852, 860 (Miss.1995) (citing Morris v. State, 595 So.2d 840, 842 (Miss.1991)). Mississippi Code Annotated Section 99-7-5 states that “[a]n indictment for any offense shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense.... ” Furthermore, in Little v. State, 744 So.2d 339 (Miss.Ct.App.1999), we found an indictment in a sexual abuse case involving a minor to be sufficient because “[we had] nothing before us that would suggest that time was an essential element of th[e] crime, nor [was] there any indication that the lack of specificity struck a critical blow to Little’s defense, such as might be the case were Little attempting to establish an alibi defense.” Id. at 341(¶ 7).
¶ 15. In this case, we find that Thomas’s indictment sufficiently apprised Thomas of the all the charges against him. Furthermore, like the court in Little, there is nothing in the record that indicates that time was an essential element of the offense, and there is nothing in the record that indicates Thomas planned to assert a time sensitive defense, such as an alibi. In fact, Thomas’s attorney did not challenge the sufficiency of the indictment until after voire dire. This Court can only conclude that Thomas was fully apprised of the crime against him and that he did not plan on using an alibi defense because of his dilatory challenge to the indictment.
*1064 Thus, we find no error and affirm the trial court’s ruling.

II. Motion to suppress

A. Standard of review

¶ 16. The standard of review for a trial court’s denial of a motion to suppress a confession is well established. The Mississippi Supreme Court has stated, “[w]hen the trial court has overruled a motion to suppress a defendant’s confession, we will reverse the trial court’s decision only if the trial court’s ruling is manifest error or contrary to the overwhelming weight of the evidence.” O’Halloran v. State, 731 So.2d 665, 570(¶ 17) (Miss.1999) (citations omitted).

B. Did the court err when it denied Thomas’s motion to suppress even though Thomas testified that he was intoxicated when he confessed, that he cannot read or write, and the police lied to him?

¶ 17. Thomas argues that his confession is in violation of his rights under the Fourteenth Amendment’s involuntariness test and his rights under Miranda. We will address each argument in turn.

1. Was Thomas’s confession involuntary?

¶ 18. Thomas argues that the trial court erred when it denied his motion to suppress his confession because he was intoxicated during the interrogation, he cannot read or write, and the detectives lied to him about the evidence against him. Thomas claims that all of these factors rendered his confession involuntary. In Carley v. State, 739 So.2d 1046 (Miss.Ct. App.1999) (citations omitted), we noted that:
The privilege against self-incrimination secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and by Article 3, § 26 of the Mississippi Constitution renders an involuntary confession inadmissible. When the volun-tariness of a confession is put in issue, the burden falls on the State to prove the voluntariness of the confession beyond a reasonable doubt. The State meets that burden by offering the testimony of those individuals having knowledge of the facts that the confession was given without threats, coercion, or offer of reward.
¶ 19. In O’Halloran v. State, 731 So.2d 565, 571(¶ 19) (Miss.1999), the supreme court addressed a case that involved a criminal defendant who argued that his confession was involuntary because he was drunk. The court reasoned:
The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances. Further, where there is conflicting evidence on a confession’s admissibility, this Court will not disturb the court’s findings “unless it appears clearly contrary to the overwhelming weight of the evidence.” No one factor is dispositive in the totality of circumstances test. “Indeed, intoxication or sickness does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication.”
Id. at (¶ 18) (citations omitted). The court held that the trial court’s order denying O’Halloran’s motion to suppress his statement was not against the overwhelming weight of the evidence. Id. at (¶ 20). Specifically, the court found that three officers testified that O’Halloran appeared sober and did not smell of alcohol when he gave his incriminating statements. Id. at (¶ 19). Furthermore, the court found that O’Hal-loran had to wait approximately an hour and a half before he was questioned. Id.
*1065 ¶ 20. Like O’Halloran, Thomas waited approximately two hours before he was interrogated. Also like O’Halloran, two police officers, Detective Zacharias and Detective Callender, testified that Thomas did not smell of alcohol and appeared sober when he confessed. After applying the precedent of O’Halloran to the facts of this case, we find no reversible error because we cannot say that the trial court’s determination that Thomas was sober is against the overwhelming weight of the evidence.
¶21. Next, Thomas argues that the trial court should have suppressed his confession because he cannot read or write; therefore, his confession was involuntary because he has limited mental faculties. Thomas supports his argument with Harvey v. State, 207 So.2d 108 (Miss.1968). In Harvey, the Mississippi Supreme Court found that an eighteen-year-old boy’s confession was involuntary and should not have been admitted into evidence because expert testimony had shown that the defendant “had the mind of a five-year-old child,” when he became worried. Id. at 110. The court held that “the objection to the confession should have been sustained when it became apparent that the defendant was not mentally capable of understanding the gravity of the charge against him or of understanding the meaning of a waiver of his constitutional rights.” Id. at 117.
¶22. This ease is easily distinguished from Harvey and is more akin to Merrill v. State, 482 So.2d 1147 (Miss.1986). The Merrill court noted:
With respect to subnormal intelligence and educational level, this Court has held that mental weakness in and of itself will not invalidate a confession unless it has shown that the weak minded person has been over reached. Williamson v. State, 330 So.2d 272, 276 (Miss.1976). In each case, the totality of the circumstances must be considered to determine whether the mentally deficient defendant has been exploited. Neal v. State, 451 So.2d 743 (Miss.1984).
Id. at 1150 (citing Stevens v. State, 458 So.2d 726, 729 (Miss.1984)). Unlike Harvey, Thomas did not submit any expert testimony that he was mentally retarded. He merely testified that he had trouble reading and writing and that he had only attended school until the sixth grade. Detective Callender fully read Thomas his Miranda rights, and Detective Zacharias wrote Thomas’s confession and explained it to him. Thomas signed both of these documents. Furthermore, Thomas and his sisters testified that Thomas was responsible for taking care of his mother before her death, and he was able to drive a car and do manual labor. While Thomas may not possess exceptional intelligence, this is not required to determine that a confession was given voluntarily under the United States Constitution or the Mississippi Constitution. The trial court determined that Thomas possessed enough mental ability to fully waive his rights and that he had not been exploited by the police. We cannot say that his determination was against the overwhelming weight of the evidence in this case.
¶ 23. Thomas argues that his confession was involuntary because it was obtained because Detective Zacharias lied to him. The Mississippi Supreme Court has stated that detectives’ lies to criminal defendants regarding the evidence against the defendants “is a factor to be considered when reviewing the voluntariness of the confession, it should be viewed in the ‘totality of the circumstances.’ ” Davis v. State, 551 So.2d 165, 169 (Miss.1989) (quoting Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)).
*1066 ¶24. During the interrogation, Detective Zacharias lied by telling Thomas that the police had conducted a black light test of the house where Thomas was living. Detective Zacharias lied further by telling Thomas that this test uncovered traces of Thomas’s semen throughout the house. After these misrepresentations, both detectives testified that Thomas recanted his previous denial and admitted to fondling Jill between twelve to fifteen times. Looking at the totality of the circumstances, we cannot say that the trial court’s ruling that Thomas’s confession was voluntary, despite Detective Zacharias’s misrepresentation, is against the overwhelming weight of the evidence.
¶ 25. Finally, Thomas argues that this Court should require law enforcement to record confessions using video cameras or audio recorders. We believe this equipment may greatly assist the trial court’s fact finding and may prohibit many frivolous appeals. However, the use of such equipment is not presently required under Mississippi law, and this Court does not have the authority to mandate such a change. Dobbs v. State, 726 So.2d 1267, 1270(¶ 7) (Miss.Ct.App.1998). Therefore, this is an issue better left to the Mississippi Legislature or the Mississippi Supreme Court.
¶ 26. In summary, the Mississippi Supreme Court has stated,
Regardless of the number of appellate judges who now, or in the future, review this case, the trial judge in this case is the only one amongst the members of the judiciary who will ever have the opportunity to not only hear the testimony, but to also observe the demeanor of the witnesses as they testified at the suppression hearing. We thus afford the appropriate deference to the trial judge since [he] was the ultimate fact-finder based on disputed testimony offered at the suppression hearing.
Glasper v. State, 914 So.2d 708, 720(¶ 28) (Miss.2005). Having examined the above arguments, we find that trial court’s determination that Thomas’s confession was voluntary is not against the overwhelming weight of the evidence. Therefore, we affirm.

2. Was Thomas’s waiver of his Miranda rights proper?

¶27. Next, Thomas argues that the trial court should have suppressed his confession because he was unable to read or understand his Miranda waiver form or his written confession because he was intoxicated and is illiterate. He argues that both of these facts make his waiver improper under Miranda. Also, he asserts that the trial court did not hold the State to the proper burden of proof, which is beyond a reasonable doubt, because it did not say the words “beyond a reasonable doubt” in its holding. Thomas argues further:
[t]he State cannot be excused from meeting the required burden of proof simply because the police elected not to provide the prosecutor with [a recording] that would irrefutably show that the suspect in question understood his rights, knowing, intelligently, voluntarily waived them, and was not overreached by coercive tactics and lies by the police into giving a false statement.
We addressed Thomas’s arguments dealing with coercive tactics and voluntariness in the previous section. Therefore, we will only address Thomas’s Miranda arguments in this section.
¶ 28. Miranda demands that a waiver be:
“made voluntarily, knowingly and intelligently.” In short, “[a] waiver is voluntary if it is ‘the product of a free and *1067 deliberate choice rather than intimidation, coercion or deception.’ ” Moreover, “[a] waiver is knowing and intelligent if it is ‘made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.’ ”
Coverson v. State, 617 So.2d 642, 647 (Miss.1993) (citations omitted). The State must prove beyond a reasonable doubt that a defendant voluntarily, knowingly, and intelligently waived his or her Miranda rights. Id.
¶ 29. In this case, the trial court found that Thomas’s waiver was voluntary, knowing and intelligent. Our review of such issues “is a mixed issue of law and fact. Norman, 871 F.2d at 1486; Terrovona v. Kincheloe, 852 F.2d 424, 428 (9th Cir. 1988). In other words: (1) if the judge based his finding upon appropriate principles of law; (2) and the finding is supported by the facts (i.e., by substantial evidence).” Holland v. State, 587 So.2d 848, 860 (Miss.1991). After reviewing the trial court’s analysis, which it read into the record during the hearing, we find that the trial court applied the proper principles of law.
¶ 30. Therefore, we must next analyze the trial court’s factual findings. When determining whether or not a Miranda waiver is proper, the trial court must conduct a totality of the circumstances analysis and look at such factors as the “defendant’s ‘experience with the police and familiarity with warnings; intelligence, including I.Q.; age; education; vocabulary and ability to read and write in the language in which the warnings were given; intoxication; emotional state; mental disease, disorder or retardation.’ ” Id. (citing State v. Whitaker, 215 Conn. 739, 578 A.2d 1031, 1039 (1990)).
¶ 31. In this case, Thomas testified that he was drunk during the investigation and that he cannot read or write. However, the detectives testified that Thomas appeared sober and appeared to have full control of his faculties. Thomas’s testimony reveals that, despite being a thirty-four-year-old who is illiterate, Thomas is able to function in society. No one testified that Thomas suffered from any mental defects, diseases, or retardation. The evidence only showed that he has trouble reading and writing. During the trial, Thomas admitted that he can recognize certain words including “yes” and “no.” Also, Thomas’s testimony showed that he can understand and answer complex questions. Detective Callender also testified that he read the Miranda rights to Thomas and that Thomas appeared to fully understand these rights. We must also remember that Thomas signed and initialed a Miranda waiver form after Detective Callender read him his rights. Thus, we affirm the trial court’s determination that Thomas knowingly, voluntarily, and intelligently waived his Miranda rights because such finding was not against the overwhelming weight of the evidence.

III. Did the trial court err when it denied Thomas’s motion for a new trial?

¶ 32. Thomas challenges the trial court’s denial of his motion for a new trial. ‘When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005). The evidence is weighed in the light most favorable to the verdict. Id. The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. *1068 Id. If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial. Id.
¶ 33. Thomas argues that the testimony in this case contained several inconsistencies, which show this Court that the trial court’s verdict was against the overwhelming weight of the evidence. First, he says that Jill had trouble remembering when the fondling began and changed her answer after the prosecutor rephrased the question. Second, he states that Pamela Brown never noticed any fondling even though she was in the same room for many of the alleged acts. Third, he says that Jill’s testimony that she slept on one side of the bed and he slept at the foot of the bed meant that they formed an “L.” Therefore, Thomas argues that she could not have seen him masturbating. Fourth, Thomas asserts that Jill told DHS that he did not fondle her. Thus, Thomas claims that Jill lied during cross-examination by testifying that she made no such statement. Finally, Thomas says that he and his sisters testified that he had his own room and that he did not have a reason for sleeping in Pamela’s room.
¶ 34. We find that the jury’s verdict is not against the overwhelming weight of the evidence. The jury had before it more than sufficient evidence to find for the State. Thomas’s confession, which we discussed previously, was admitted into evidence. Furthermore, Jill testified regarding the events and the fondling. The standard of review demands that we review the evidence of this case in the light most favorable to the verdict. In this ease, the victim’s testimony supports a conviction, and Thomas’s denial and his sister’s testimony is against the verdict. We will not invade the province of the jury regarding such credibility determinations. We find that the verdict was not against the overwhelming weight of the evidence; therefore, we affirm.

IV. Improper closing argument

¶ 35. During Thomas’s weight-of-the-evidence argument, he argues that the prosecutor made an improper statement during his closing argument. Thomas argues that the prosecutor made an improper “send a message” argument when the prosecutor stated, “[hjave y’ all seen the law enforcement memorial out there for the officers who [have] given their life in this country? Now, when an officer dies we call him a hero.” Thomas objected to this statement. The prosecutor explained the statement to the trial court by stating “[y]our honor, [they are] going to attack police and the job that they do, and I want to talk about the job that they do.” The trial court sustained the objection with regard to police dying, but it allowed the State to discuss the job that police officers do.
¶ 36. “Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety.” Ballenger v. State, 667 So.2d 1242, 1270 (Miss.1995) (quoting Ahmad v. State, 603 So.2d 843, 846 (Miss.1992)); Davis v. State, 660 So.2d 1228, 1248 (Miss.1995). After reviewing the prosecutor’s argument, we do not interpret this statement as a “send a message argument,” because it does not implore the jury to take any action. See Williams v. State, 522 So.2d 201, 208 (Miss.1988). While we discourage arguments such as this, we cannot say that this comment was improper after considering it in context. Thomas was attempting to attack his confession by attacking the detectives who witnessed his confession. Therefore, the prosecutor was merely at *1069 tempting to rebut what he believed Thomas would argue during his closing argument. Accordingly, we find no merit to this issue.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF FONDLING AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

. The name of the minor child has been changed to "Jill.”

. Also, during this hearing, Thomas moved to sever the indictment that originally consisted of five counts. The trial court severed the indictment. The State tried Thomas on count one of the original indictment and subsequently dismissed all of the other counts.