GRIFFIS, J.,
 

 for the Court:
 

 ¶ 1. Diann Gooden was convicted of two counts of fraud under Mississippi Code Annotated section 97-7-10 (Rev.2006). On appeal, she argues that: (1) the circuit court improperly denied her motion to suppress; (2) her motion for a directed verdict at the close of the State’s evidence should
 
 *300
 
 have been granted; and (3) the verdict is against the overwhelming weight of the evidence for Counts II and III.
 
 [1]
 
 We find no error and affirm.
 

 FACTS
 

 ¶ 2. Gooden was a deputy clerk at the Washington County Tax Collector’s Office. The tax collector’s office issues vehicle registrations and car tags. Car-tag fees are charged according to the taxing district where the person resides. For instance, a person living inside a city is charged a higher fee for a tag than a person living outside the city. This higher fee is due to the municipal taxes for citizens who live inside the city limits. The tax collector’s office also collects penalties when a person renews a car tag after the expiration date. This penalty is waived if the driver can show that the car was being repaired while it did not have a current tag.
 

 ¶ 3. In 2006, the Attorney General’s Office received complaints about a deputy clerk at the Washington County Tax Collector’s Office. The complaints alleged that a deputy clerk was changing customers’ addresses to false addresses, which were located in a lower-valuation taxing district.
 

 ¶ 4. The Attorney General’s Office opened an investigation. Karl Pree, the chief investigator, interviewed 4,200 people. Five out of the 4,200 stated that Gooden had changed their addresses to lower taxing districts.
 

 ¶ 5. On July 12, 2007, Officer Pree interviewed Gooden. During the interview, Gooden admitted that she had changed several customers’ addresses to other districts so the customer could pay a lower fee for his or her car tag. She also described how she kept blank forms to give to customers to escape the penalty associated with late tag registration. These forms listed a car-repair shop which did not exist. When a customer came in, Goo-den would fill out the service number and customer’s automobile VIN, and then she would write in that the engine was being repaired. The customer would then have the form notarized and return it to the tax collector’s office. Gooden admitted that she had accepted at least $2,000 for her services.
 

 ¶ 6. A grand jury indicted Gooden on four counts of fraud under section 97-7-10. Gooden filed a motion to suppress her statements in the interview. The circuit court denied her motion.
 

 ¶ 7. The State called Bernard Marsalis to testify about a car tag he had purchased in August 2006. The August 2006 tax receipt and accompanying affidavit indicated that Marsalis’s car tag was expired because his car had been in the repair shop for engine work.
 

 ¶ 8. Marsalis admitted that his registration had lapsed, but it had lapsed while he was attempting to sell the car and not because the car was in a repair shop. Marsalis testified that when he finally went to the tax collector’s office to renew his car tag and pay his penalty, the deputy clerk handed him a form to sign and have notarized. The form stated that his car had been at Moore’s repair shop. Gooden filled in Marsalis’s car’s information, which stated that the car had been at the repair shop for engine work.
 

 ¶ 9. Marcus Cannon testified that he purchased his car tags from Gooden. He recommended her to people. Cannon had worked at the tax collector’s office in the
 
 *301
 
 past. He knew that she would give him a discount.
 

 ¶ 10. Gooden moved for a directed verdict at the close of the State’s evidence. The circuit court denied her motion. The jury found Gooden guilty of two counts of fraud. Gooden filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied by the circuit court. Gooden now appeals.
 

 ANALYSIS
 

 1. Whether the circuit court erred when it denied Gooden’s motion to suppress.
 

 ¶ 11. Gooden argues that Officer Pree tricked her during the interview and that her confession should be suppressed because her
 
 Miranda
 
 rights had been violated. The State responds that the circuit court did not err when it denied Gooden’s motion to suppress because the interview was not a custodial interrogation and did not require the procedural safeguards of
 
 Miranda.
 

 ¶ 12.
 
 Miranda
 
 warnings are needed once the suspect is subject to “custodial interrogation.”
 
 Compton v. State,
 
 460 So.2d 847, 849 (Miss.1984). To be subject to custodial interrogation, the suspect must be both in custody and undergoing interrogation. A suspect is in custody when his right to freely leave has been restricted.
 
 Roberts v. State,
 
 801 So.2d 859, 861 (Miss.1974). The accused is subject to interrogation when he is questioned by the police or the functional equivalent.
 
 Pierre v. State,
 
 607 So.2d 43, 52 (Miss.1992). The functional equivalent is any sort of activity that the police reasonably believe will produce an incriminating response.
 
 Rhode Island v. Innis,
 
 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
 

 ¶ 13. Once the defendant alleges that the confession was in violation of her
 
 Miranda
 
 rights, the prosecution shoulders the burden of proving beyond a reasonable doubt that the confession was voluntary.
 
 Haymer v. State,
 
 613 So.2d 837, 839 (Miss.1993). This “burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward.”
 
 Chase v. State,
 
 645 So.2d 829, 838 (Miss.1994) (quoting
 
 Cox v. State,
 
 586 So.2d 761, 763 (Miss.1991)). “When the trial court has overruled a motion to suppress a defendant’s confession, we will reverse the trial court’s decision only if the trial court’s ruling is manifest error or contrary to the overwhelming weight of the evidence.”
 
 O’Halloran v. State,
 
 731 So.2d 565, 570 (¶ 17) (Miss.1999) (citation omitted).
 

 ¶ 14. Gooden argues that she was a suspect from the beginning of the interview and should not have been questioned without
 
 Miranda
 
 warnings. “The mere possibility of incrimination does not mean that a custodial interrogation occurred in violation of
 
 Miranda [v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ].”
 
 Drake v. State,
 
 800 So.2d 508, 514 (¶ 17) (Miss.2001) (citation omitted).
 

 ¶ 15. The interview occurred at an office of the Washington County Tax Collector during normal working hours. Gooden was there voluntarily and under no restraints. Two investigators were present. The interview lasted approximately one and one-half hours. No evidence was presented that there was any violence, threats of violence, or offers of reward to induce her confession.
 

 ¶ 16. After a suppression hearing, the circuit court found that Gooden had not been subject to custodial interrogation.
 
 *302
 
 The court found that: “As to coercion, there was no testimony by the accused of any threats, offers of reward, violence or threats of violence to induce her confession. Officer Pree testified none of the above was done [ ]or offered.” We find no evidence to the contrary. Accordingly, we find that the circuit court did not err in finding that there was no violation of Goo-den’s
 
 Miranda
 
 rights. This issue is without merit.
 

 2. Whether there was sufficient evidence to support Gooden’s conviction.
 

 ¶ 17. Gooden argues that her motion for a directed verdict should have been granted at the close of the State’s case. Specifically, she contends that the State did not prove every element of the offense charged because no one actually saw Gooden falsify information on any document. The State responds that the evidence was sufficient to support the conviction.
 

 ¶ 18. When reviewing the denial of motion for a directed verdict based on an objection to the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted).
 

 ¶ 19. To support a guilty verdict, the State was required to prove every element of the crime. Section 97-7-10(1) provides:
 

 Whoever, with intent to defraud the state or any department, agency, office, board, commission, county, municipality or other subdivision of state or local government, knowingly and willfully falsifies, conceals or covers up by trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall, upon conviction, be punished by a fine of not more than Ten Thousand Dollars ($10,000.00) or by imprisonment for not more than five (5) years, or by both such fine and imprisonment.
 

 ¶20. The State argues that the evidence that supported Gooden’s convictions on Counts II and III was presented through the testimony of Officer Pree and two of Gooden’s “customers.”
 

 ¶21. Officer Pree testified about his interview with Gooden. Gooden admitted she had changed the addresses for the taxing districts to reduce the fees paid for car tags. She also admitted to him that she had supplied a made-up repair shop listed on the penalty waiver form to enable customers to have their late penalties waived.
 

 ¶ 22. Marsalis, the subject of Count II, testified that he was provided a blank form by a deputy clerk at the Washington County Tax Collector’s Office when he was late renewing his car tag. The form stated that his truck had been in the repair shop when his tags came up for renewal. The State also presented physical evidence of the transaction when the tax registration receipt, accompanying penalty-waiver form and affidavit were shown at trial. Marsal-is testified that his truck had never been to the repair shop, and he had let his tags expire while he was trying to sell his car. The State also established that the repair shop listed on the form never existed. Marsalis testified that the clerk who gave him the blank form and the clerk who gave him his registration receipt were one in the same. The initials on the registration receipt were “DG.”
 

 
 *303
 
 ¶ 23. Cannon, who is the subject of Count III, testified that Gooden knowingly and willfully falsified documents. Cannon testified that he had bought numerous car tags from Gooden. When he purchased his tags, he only gave Gooden his car information because Gooden provided a false address on his tax receipt. At the time of the purchase, Cannon lived in the City of Leland. However, at trial, the State presented a tax receipt that stated that he lived at a P.O. Box in the county— a lower-valuation taxing district.
 

 ¶24. Although no one witnessed Goo-den firsthand falsify the documents, reasonable inferences may be drawn from this evidence to support the conviction. Viewing all the evidence in a light most favorable to the State, we find that a rational jury could find beyond a reasonable doubt that Gooden knowingly committed fraud. Accordingly, this issue has no merit.
 

 3. Whether the verdict is against the overwhelming weight of evidence.
 

 ¶ 25. Gooden argues that the verdict is against the overwhelming weight of the evidence. Specifically, Gooden asserts that the State failed to show that she aided Marsalis since Marsalis could not identify Gooden as the deputy clerk who had sold him his tag and failed to show that she purposefully wrote in wrong addresses because no one witnessed her firsthand falsify the receipt. The State responds that there is ample evidence to support the jury’s verdict.
 

 ¶ 26. On a motion for a new trial, we determine whether the jury verdict is against the overwhelming weight of the evidence.
 
 Montana v. State,
 
 822 So.2d 954, 967 (¶ 61) (Miss.2002). In
 
 Montana,
 
 the supreme court concluded that:
 

 this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
 

 Id.
 
 at 967-68 (¶ 61) (internal citation omitted). Finally, it must also be remembered that it is the duty of the jury to assess the credibility of witnesses.
 
 Smith v. State,
 
 821 So.2d 908, 910 (¶ 4) (Miss.Ct.App.2002).
 

 ¶ 27. The offense of fraudulent statements and representations required that the State prove that Gooden, “with intent to defraud the state or any department, agency, office, board, commission, county, municipality or other subdivision of state or local government, knowingly and willfully falsifie[d], concealed] or cover[ed] up by trick, scheme or device a material fact, or ma[de] any false, fictitious or fraudulent statements or representations, or ma[de] or use[d] any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry. ...” Miss.Code Ann. § 97-7-10.
 

 ¶ 28. There was sufficient evidence to establish that Gooden intended to defraud the state when she provided Marsalis the form with the made-up repair shop. She admitted that she gave persons, who were late and subject to penalties, improper forms and filled in a made-up repair shop and made-up repairs. Marsalis testified that he had taken advantage of this “service” offered by one of the deputy clerks. The initials “DG” were signed on his receipt. He testified that the same person who gave him his receipt was the person who also provided him with the form.
 

 ¶ 29. Since no one saw Gooden fill out the information, she claims that the State failed to prove that she did it. “[A]ll the
 
 *304
 
 proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case.”
 
 Campbell v. State,
 
 278 So.2d 420, 423 (Miss.1973).
 

 ¶ 30. It was the jury’s duty to assess the credibility of each witness and to draw its own conclusions from the circumstantial evidence. In light of the witnesses’ testimonies and evidence presented, the logical inference is that Gooden knowingly filled out false information knowing that the writing was false when Cannon and Mar-salis purchased their car tags. The jury’s finding that Gooden did defraud the State of Mississippi by making fraudulent statements and misrepresentations is not against the overwhelming weight of evidence. Accordingly, this issue is without merit.
 

 ¶ 31. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT II, FRAUD, AND SENTENCE OF FIVE YEARS; AND COUNT III, FRAUD, AND SENTENCE OF FIVE YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Gooden was found not guilty of Count I, and the State dismissed Count IV of the indictment.