482 So.2d 1147 (1986)
Augustine MERRILL
v.
STATE of Mississippi.
No. 55297.
Supreme Court of Mississippi.
February 5, 1986.
*1148 Roy Pitts, Meridian, for Merrill.
Edwin Lloyd Pittman, Atty. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for State.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Augustine Merrill was tried on August 30, 1983, in the Circuit Court of Newton County, Mississippi, and convicted of the crime of murder. She was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. From her conviction and sentence, she appeals to this Court.
In the early morning of January 9, 1983, Augustine Merrill shot and killed her husband, Robert Merrill. Although Robert Merrill had been arguing and fighting earlier with his wife, Augustine Merrill waited until he had been asleep thirty minutes before she shot him. She used a .410 bore shotgun which had been kept in the family car and loaded it with a shell retrieved from coveralls also kept in the car.
After shooting her husband, Augustine Merrill and her children tried to carry Robert (who was then still alive) out to the car. Failing in this effort, she left Robert in the yard, drove to a neighbor's house and instructed the neighbor to attend to Robert. She then drove to her mother's house in Lauderdale County. Accompanied by members of her family, Augustine Merrill turned herself in to the Lauderdale County Sheriff's office in Meridian.
At trial Robert Dean, Deputy Sheriff of Newton County testified that on January 9, 1983, at 12:20 a.m., he was called to the home of Robert Merrill in the Battlefield Community. There he found the body of Robert Merrill lying in the front yard. Inside the Merrill's house there was a couch covered with blood; a trail of blood led to the body.
At approximately 2:00 a.m. Dean talked with Augustine Merrill at the Newton County Sheriff's office. Sheriff Ed Cumberland, Deputy Bud Miles, Dean, and Augustine Merrill were present. At that time Augustine Merrill did not appear to be under the influence of any drugs or alcohol and no threats or promises of leniency were made to her. She was read her Miranda rights and subsequently confessed to the killing.
Sheriff Ed Cumberland testified to essentially the same set of events as had Dean. The .410 shotgun that had been turned over to the Lauderdale County Sheriff's office was given to Sheriff Cumberland. Augustine Merrill admitted that it was the gun she had used and that it had belonged to her husband Robert.
Deputy Sheriff David Franklin, of the Lauderdale County Sheriff's Department, testified that Augustine Merrill came to the Lauderdale County Sheriff's office at approximately 1:00 a.m. on the morning of January 9, 1983, accompanied by three other people. A .410 bore shotgun was turned over to him at that time. Franklin identified it as the same one which had been introduced by Sheriff Cumberland. Franklin also testified that Augustine Merrill had not appeared to be under the influence of drugs or alcohol and that no threats or promises of leniency were made to her. At that time, in the Lauderdale County sheriff's office, Augustine Merrill had signed a *1149 waiver of her Miranda rights after which she confessed.
Newton County Deputy Sheriff Bud Miles corroborated the testimony of the other law enforcement officers.
Dr. Robert Jarrett, the physician who performed the autopsy on Robert Merrill, testified that his death had been caused by a shotgun wound to the abdomen. He also indicated that the gun had been fired from very close range.
The state rested its case and the defense offered as a witness Annie Cryer, the mother of the defendant. Mrs. Cryer testified that the marriage of Augustine and Robert Merrill had been characterized by "violence between them." She further testified that, on the night of the killing, Augustine had walked with a stagger and had exhibited a staring countenance. However, she admitted that she saw no cuts on her daughter that night.
Two brothers and a sister of Augustine Merrill corroborated their mother's testimony as to the turbulent nature of the Merrills' marriage. One brother, Lonnie Cryer, also testified that, on the night of the killing, he had accompanied his sister to the Lauderdale County Sheriff's office. He said that her movements had been slow and she had seemed to walk with her head down.
Augustine Merrill took the stand in her own defense. Much of her testimony attested to the violent nature of her marriage. With reference to the night of January 9, 1983, Augustine Merrill stated, "I was always scared of him. (Robert)". When asked why she shot her husband she said "I didn't want him hitting on me." She said that Robert had been hitting her pretty hard and roughing her up.
On cross-examination, Augustine Merrill was asked the following:
Q. Now, Mrs. Merrill, at the time you shot Robert on January 9, 1983, you knew that it was wrong to shoot him, didn't you?
A. (Pause) Yeah, I knew it was wrong.
A Meridian psychologist, Dr. Thomas Elliott, testified that he had seen Augustine Merrill in April, 1982 and July, 1983. He stated that her full scale I.Q. of 71 placed her in the lower 5% of the population. Her mental age, at best, was between 10 to 13 years. At the time Dr. Elliott saw Augustine Merrill she seemed confused about her age and her mood seemed depressed. Dr. Elliott also testified that Augustine Merrill reported that her husband had beaten her on occasion during the previous four years.
Dr. Elliott also stated that Augustine Merrill would have known right from wrong at the time of the killing although she probably lacked the ability to appreciate the long range consequences of her actions. He stated that there was doubt as to whether Augustine Merrill understood the notion of death.
Dr. Tim Summers, a psychiatrist, was called as a witness by the state. He stated that he had seen Augustine Merrill in August of 1983. In his opinion, on the night of the crime, Augustine Merrill understood the wrongfulness of her act. Dr. Summers said that, although he had not performed a standardized intelligence test on Augustine Merrill, he felt that her general intelligence was "dull normal".
The initial question raised on appeal is whether Augustine Merrill was competent to waive her rights and thereby have her confession admitted against her. This Court has recently commented on the admission of such confessions in the case of Neal v. State, 451 So.2d 743 (Miss. 1984). Cert. denied. ___ U.S. ___, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984).
This brings us to the issue of [the defendant's] mental retardation. In his voluntariness determination, the trial judge must first determine whether the accused, prior to the confession, understood (a) the content and substance of the Miranda warnings and (b) the nature of the charges of which he was accused or with respect to which he was under investigation.
* * * * * *

*1150 Not one of (our) cases announces a per se rule. They stand collectively for the proposition that the mental abilities of an accused are a factor  but only one factor  to be considered. When all of the facts and circumstances of the particular confession and the interrogation leading up to it are considered  including the accused's abilities  the trial judge must find as a fact whether the confession was intelligently and voluntarily made. That fact finding will not be disturbed here unless we find it clearly erroneous.
Id. at 755-756.
Subsequently, in Stevens v. State, 458 So.2d 726 (Miss. 1984), this Court noted:
With respect to subnormal intelligence and educational level, this Court has held that mental weakness in and of itself will not invalidate a confession unless it has shown that the weak minded person has been over reached. Williamson v. State, 330 So.2d 272, 276 (Miss. 1976). In each case, the totality of the circumstances must be considered to determine whether the mentally deficient defendant has been exploited. Neal v. State, 451 So.2d 743 (Miss. 1984)
Id. at 729.
In the instant case, there is no evidence of overreaching on the part of law enforcement officials. Of significance is the uncontroverted fact that Augustine Merrill turned herself in to law enforcement officials. Similarly, in Stevens, it was noted that the appellant there summoned the sheriff in order to make his statement. Augustine Merrill signed a waiver of rights while she was still in Lauderdale County. After returning to Newton County, Augustine Merrill was again orally advised of her rights. Several witnesses testified that she stated that she understood when she waived her rights. Following her waiver, Augustine Merrill confessed to the killing. There was absolutely no evidence to indicate any threat, coercion or promise of leniency which might have induced the execution of the waiver and Augustine Merrill's statement. Furthermore, when asked at trial if she had killed her husband, Augustine Merrill again confessed.
The appellant also contends that she was erroneously limited in eliciting testimony indicative of her insanity, and that she was erroneously denied a peremptory instruction on insanity. Both contentions are without merit.
In Mississippi, it is well established that, in order to be found not guilty by reason of insanity, a person must be insane under the M'Naghten test, that is, unable to distinguish between right and wrong. Frost v. State, 453 So.2d 695 (Miss. 1984); Billiot v. State, 454 So.2d 445 (Miss. 1984); Edwards v. State, 441 So.2d 84 (Miss. 1983); Groseclose v. State, 440 So.2d 297 (Miss. 1983).
In the case sub judice, the appellant was damned by her own words and witnesses. She stated that, at the time of the killing, she knew it was wrong. Her witness, Dr. Thomas Elliott, testified that she knew right from wrong at the time of the killing. Additionally, Dr. Tim Summers, a state's witness, testified that on the night of the crime Augustine Merrill understood the wrongfulness of her act. There is a dearth of evidence that the appellant was ever unable to distinguish between right and wrong; any error premised on that assertion, therefore, is without merit.
The final question raised on appeal is whether the trial court erred by refusing to instruct the jury on the issue of self-defense. At the close of trial, counsel for Augustine Merrill submitted two self-defense instructions. The trial judge ruled that there was no evidence to justify those instructions and refused both of them.
In the instant case there was no evidence that Augustine Merrill was acting in self-defense. The uncontroverted testimony was that the victim, Robert Merrill was asleep and had been asleep approximately thirty minutes at the time he was shot and killed. Instructions to the jury should be given only if they are applicable to the facts developed in the case. Williams v. State, 445 So.2d 798 (Miss. 1984). *1151 The trial judge properly refused the self-defense instructions.
Finding no error, we affirm the judgment of the trial court.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.