769 So.2d 857 (2000)
McDaniel WEATHERSBY a/k/a David Weathersby McDaniel, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00702-COA.
Court of Appeals of Mississippi.
August 15, 2000.
Rehearing Denied October 24, 2000.
Thomas M. Fortner, Jackson, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. McDaniel Weathersby was convicted in a single trial of two counts of armed robbery and one count of business burglary, all arising out of one incident. He appeals his convictions to this Court, raising three issues. First, Weathersby *858 claims that the trial court erred in admitting evidence that, during the course of the robbery, he committed acts of sexual battery on one of the robbery victims. Secondly, he claims that the trial court, by remarks during voir dire, hopelessly prejudiced Weathersby's chance to receive a fair trial by suggesting his duty to call witnesses to prove his lack of guilt. Finally, Weathersby asserts that the prosecuting attorney made improper comments during summation on his failure to testify in his own defense. We find these issues to be without merit and affirm the convictions.

I.

Facts
¶ 2. Weathersby was charged as a participant in a three-person late-night robbery of a business in Hinds County known as Knight Sign Industries. The State's evidence indicated that the business owner, Jeff Wilson, and his fiancé, Renee Dedmon, were in the business around midnight when Dedmon went out to move her car so that Wilson could reposition a company truck before departing for the evening.
¶ 3. While in the parking lot, Dedmon was physically captured and dragged back into the business by a man armed with a shotgun. Wilson and Dedmon were both incapacitated by having their hands bound behind them with duct tape. Thereafter, the gunman was joined by two associates. These associates loaded Wilson's truck with goods from the business, obtained the keys and departed, only to return shortly thereafter with another larger truck, which they also proceeded to fill with goods belonging to the business. During the entire timelater estimated to be one hour and forty minutesthe gunman remained standing guard over Wilson and Dedmon. During the period the gunman stood guard, he repeatedly threatened to rape Dedmon. Though he did not carry through with this threat, he did commit two acts of sexual battery on her.
¶ 4. Evidence presented at trial by the State suggested the likelihood that Weathersby was the gunman.

II.

The First Issue: Evidence of the Sexual Battery
¶ 5. Weathersby entered a timely objection to the evidence of the acts of sexual battery committed on the female robbery victim, claiming that it had no probative value as to the matters being tried, but was, rather, inadmissible evidence of other bad acts presented for the sole purpose of demonstrating Weathersby's bad character. See M.R.E. 404(b). The trial court permitted the jury to hear the evidence over the objection. Weathersby argues before this Court that this was reversible error because the evidence was inadmissible evidence of other bad acts introduced solely to suggest that Weathersby was a person of generally bad character and, therefore, likely to commit the crime charged. See M.R.E. 404(b). Alternatively, he argues that the trial court was obligated, once the court determined the evidence admissible despite a Rule 404(b) objection, to sua sponte instruct the jury on the limited purposes for which this "other bad acts" evidence could be considered. Robinson v. State, 735 So.2d 208(¶ 10) (Miss.1999); Smith v. State, 656 So.2d 95, 100 (Miss.1995). The absence of such an instruction requires reversal of the convictions, according to Weathersby's argument.
¶ 6. All cases cited by Weathersby involve evidentiary matters having no direct relation to the crime itself. See, e.g., Banks v. State, 725 So.2d 711 (Miss.1997); Bounds v. State, 688 So.2d 1362 (Miss. 1997); Smith v. State, 656 So.2d 95 (Miss. 1995); U.S. v. Merriweather, 78 F.3d 1070 (6th Cir.1996). However, in Weathersby's case, the conduct attributed to him occurred during the episode that constituted the criminal behavior for which Weathersby stood accused. This presents different considerations in the view of this Court.
*859 ¶ 7. Weathersby would have the court in a criminal trial dissect the facts of the incident, and by the application of Rule 404(b), sanitize what the jury would be permitted to hear by excluding any evidence that may have shown criminal behavior different from that for which the defendant was being tried. However, the Mississippi Supreme Court has said that such a paring away of the facts surrounding a particular incident is not necessary. Rather, according to the supreme court, the jury is entitled to hear all the facts in order to have as complete a grasp as possible as to what actually occurred. By way of example, the supreme court, in a case involving the murder of a store clerk, permitted the jury to hear evidence that the defendant had threatened to kill another individual a few minutes after the murder. The court distinguished between bad acts unrelated to the charged crime and those "intimately connected with the crime charged as to be necessary to the telling of a complete and clear story" of what occurred. Bell v. State, 725 So.2d 836, 850 (Miss.1998). The court said that "where the bad conduct is so closely intertwined with the crime charged and has a direct relationship to the [crime being tried], as it does here, there is no error in allowing the jury to hear it." Id. at 851.
¶ 8. In this case, the evidence of Weathersby's conduct was closely tied to the crime. The jury was entitled to hear a complete story of the events that occurred on the evening in question. We do not think that a criminal defendant may scour the criminal code to find a statute different from the one under which he is being tried that arguably prohibits some action that occurred during the event and then use that as a basis to exclude evidence of that action.
¶ 9. Were the jury limited to hearing only a piecemeal version of the critical events surrounding alleged criminal activity, cleansed of any mention of acts not directly related to the essential elements of the charged crime, the chance for misunderstanding and confusion would rise to an intolerably high level. Matters that, taken in isolation and out of context, might appear implausible could conceivably take on an entirely different light if the jury had a full understanding of all events. The theory of the law as found in Rule 404(b) that bars the jury from considering unrelated bad acts simply does not apply with the same force to bad acts that are inextricably intertwined in the criminal event being tried, and we decline to extend the concept that far.
¶ 10. Additionally, on the facts of this case, it must be kept in mind that robbery is a crime against the person and involves acts of violence or behavior putting the victim in fear of some immediate personal injury to accomplish the criminal purpose of depriving that person of his property. Miss.Code Ann. § 97-3-79 (Rev.1994). It is entirely possible that the jury could have considered Weathersby's behavior to be a part of a continuing scheme to terrorize his victims, thereby ensuring their continued passivity, and thereby guarding against the possibility of resistance as his associates continued the process of looting the business. Weathersby argues in his brief that the State had other evidence sufficient to meet its burden of proof as to the element of fear without the introduction of this "inflammatory testimony." The validity of that assertion, of course, depends entirely on how the jury viewed the weight and worth of the other evidence a matter upon which anyone other than the jury members themselves can only speculate. In all events, there is no evidentiary rule that permits a defendant to have evidence excluded based on the proposition that other evidence, already admitted, is sufficient to establish the point in contention.
¶ 11. We find the evidence to have been admissible and, therefore, conclude that this issue is without merit.

III.

The Second Issue: Improper Trial Court Comments
¶ 12. During jury qualification, the trial court gave prospective jurors a brief *860 exposition on how a criminal trial normally unfolds. Included in that comment was an observation that the State is required to present its evidence first and that, after the State has concluded its proof, the defendant then presents evidence on his behalf. Defense counsel moved for a mistrial at this point claiming that the trial court had, perhaps unwittingly but certainly prejudicially, put pressure upon the defendant to testify in his own defense. Alternatively, defense counsel argued that the mere suggestion that the defense would call witnesses destroyed his right not to present any evidence and simply rely on the proposition that the State's evidence, unrebutted except for damage inflicted in cross-examination, failed to prove guilt beyond a reasonable doubt. According to defense counsel's argument, once the jury received the trial court's comments, it would come to expect the defendant to present some sort of evidence and would view critically his failure to do so.
¶ 13. Certainly, any comment during the course of the trial that would suggest to the jury that the defendant will, or even ought to testify to establish his innocence violates the protections of the Fifth Amendment against self-incrimination. Jones v. State, 381 So.2d 983, 993 (Miss. 1980). However, we do not interpret the trial court's comments to suggest the necessity for the defendant to testify. To the extent that the comments gave rise to an expectation that the defendant would present some form of evidence, the jury certainly would have understood that evidence can take many forms beyond the testimony of the defendant himself. We, therefore, decline to find that the trial court's explanation to the jury of how the trial might be expected to unfold created a prejudicial expectation that the defendant could be expected to testify as to his innocence.
¶ 14. This leaves unanswered the more general assertion that simply suggesting that the defendant could be expected to put on evidence to refute the State's proof impermissibly weakened the presumption of innocence that requires the jury to acquit if the State's evidence, standing alone, is not strong enough to convince the jury of the defendant's guilt beyond a reasonable doubt. Weathersby presents no authority for the proposition and we conclude that it is highly unlikely that the jury would read as much into the trial court's comments as did defense counsel. Merely explaining to the jury the order in which the parties will present their evidence does not, in our view, create an improper inference of the defendant's duty to present affirmative proof of his innocence. We note that, during the course of a criminal trial, it is not an uncommon practice, after the State has rested, for the trial court to offer the defendant in the presence of the jury the opportunity to present evidence. We have some difficulty in concluding that there is a material difference between this practice and the earlier comments by the trial court in this case in terms of highlighting to the jury that, despite having the opportunity to present additional evidence tending to prove his innocence, the defendant has elected not to take advantage of that opportunity. Perhaps, in a hyper-technical sense, the trial court, in briefing the jury on what to expect during the course of the trial, should have indicated that, at the close of the State's case, the defendant would be given the opportunity to present his own evidence rather than stating that the defendant would do so. However, we decline to draw so fine a line between these two largely indistinguishable comments such that one is perfectly permissible yet the other is so prejudicial as to require reversal of a criminal conviction.
¶ 15. In the typical criminal trial, the refusal of the defendant to present any evidence after the State has rested serves primarily to present the opportunity for defense counsel to forcefully highlight the perceived weakness in the prosecution's case during summation. Nothing in the comments by the trial court in this case *861 appears to have destroyed or even weakened this opportunity for the defendant. For that reason, we do not find that the comments by the trial court were so prejudicial as to deprive Weathersby of a fundamentally fair trial and we decline to reverse his convictions on this basis.

IV.

The Third Issue: Improper Summation by the Prosecution
¶ 16. Weathersby's final issue concerns remarks by the prosecutor during summation to the effect that there was no reason to doubt any of the evidence offered by the State's witnesses because "there is no defense. There is no evidence to the contrary." Weathersby argues that this amounted to an improper comment on the defendant's failure to testify.
¶ 17. Prior decisions by the Mississippi Supreme Court have conceded that a prosecutor may not, even indirectly, comment adversely on the defendant's failure to testify in his own defense. McGilberry v. State, 741 So.2d 894(¶ 33) (Miss.1999); Jimpson v. State, 532 So.2d 985, 991 (Miss. 1988). On the other hand, the court has found that adverse comments on the defendant's failure to present any defense at all are not a prohibited form of argument to the jury. McGilberry, 741 So.2d at 907-08(¶ 35); Hobson v. State, 730 So.2d 20(¶ 27) (Miss.1998).
¶ 18. In this case, the prosecution comment went to the total lack of evidence from the defense to contradict the proof introduced by the prosecution. On the facts of this case, such evidence could have been in the form of testimony from persons other than the defendantone such example being an alibi witnessand we do not conclude, for that reason, that the prosecution was trying, by innuendo, to stress to the jury that the defendant did not elect to testify in his own defense to deny his involvement in the crime. For that reason, we do not find the comments to be the ground for reversing the convictions in this case.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND SENTENCES OF FORTY TWO YEARS EACH AND ONE COUNT OF BURGLARYBUSINESS AND SENTENCE OF SEVEN YEARS, ALL SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.