984 So.2d 1042 (2008)
Clarence E. EPPS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00139-COA.
Court of Appeals of Mississippi.
February 19, 2008.
Rehearing Denied June 24, 2008.
*1043 Thomas Richard Mayfield, Thomas E. Royals, Jackson, attorneys for appellant.
Office of the Attorney General by Deshun Terrell Martin, attorney for appellee.
Before LEE, P.J., CHANDLER, GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. On November 15, 2006, Clarence Epps was found guilty in the Circuit Court for the First Judicial District of Hinds County for the aggravated assault of his stepfather, James Eubanks. Epps's sentence was enhanced because the victim, Eubanks, was over the age of sixty-five at the time of the incident, and Epps was a habitual offender. On appeal, Epps argues: (1) the trial court erred when it denied his motion for a mental examination, (2) the State committed plain error when it commented on Epps's failure to testify, and (3) his counsel was ineffective for failing to fully investigate and develop an insanity defense or the issue of incompetency. We find no error and affirm.

FACTS
¶ 2. On the day before trial, Epps moved for a mental examination to determine whether or not he was competent to stand trial. During a hearing on the motion, Epps called his mother, Elma Eubanks. She testified that "when [Epps is] not taking his medicine he talks out [of] his head some. . . . He talks about Martin Luther King, God . . . [and] the bible." She also said that he roams late at night and talks to desk fans. She testified that she first committed Epps to the state hospital in *1044 1986 and that Epps has been suffering from the same mental ailment for twenty years. She said he had also been admitted to the Veterans' Administration Hospital, the University Medical Center, St. Dominic's Hospital, and Brentwood Hospital for psychological treatment. She said she had been to chancery court three times to have him committed.
¶ 3. Epps's mother stated that Epps had just been released from Brentwood Hospital on the day that Epps shot Eubanks. She also testified that, after Epps was arrested for shooting Eubanks, the staff of the Hinds County Detention Center did not properly administer Epps's medicine to him; and Epps had been placed on suicide watch for a short period of time while confined. She also testified that the state hospital diagnosed him with schizophrenia and bipolar-like symptoms.
¶ 4. On cross-examination, Epps's mother revealed that Epps had been denied disability benefits. She also said that Epps checked himself out of Brentwood on the day of the shooting, and Brentwood had administered medicine to Epps while he stayed there. She stated that usually the mental health facilities discharged Epps after approximately thirty days. She agreed that the detention center was now properly administering Epps's medicine to him.
¶ 5. In its ruling, the trial court found that Epps had presented no medical evidence. The court stated that there had been two prior guilty pleas by the defendant and that there is a presumption that he properly assisted his counsel in these cases, which were just five years old.[1] Thus, the trial court found that Epps's psychosis did not hinder his participation in his previous cases. The trial court viewed the evidence presented to it by Epps as "more of a scintilla type of evidence." Therefore, the trial court denied Epps's motion.
¶ 6. At trial, James Eubanks, the victim, testified for the State. Prior to the shooting, Eubanks had told his wife and Epps on several occasions that Epps could not live with them. Eubanks testified that on the day of the shooting Epps walked over to his house to get something to eat. Eubanks said that, after Epps got some food out of the refrigerator, he went into Eubanks's bedroom and retrieved Eubanks's pistol. Eubanks stated that Epps shot him in his hand and in his head. They fought briefly, and Eubanks ran and fell through the front door onto the front porch. When Eubanks fell onto the porch, Epps left the scene of the shooting with the pistol.
¶ 7. Detective Kent Daniels also testified for the State. Daniels said that he explained Epps's Miranda rights to him during Epps's interrogation. Daniels also stated Epps signed a Miranda waiver form. Next, Daniels said that Epps confessed that he had shot Eubanks, and Epps signed a written confession. Epps also admitted that after the shooting he threw the gun in a ditch when he was running from the scene. He also stated that he fired the weapon at Eubanks once or twice. Detective Daniels also testified during a motion to suppress Epps's confession. Detective Daniels stated that on the day of the confession, which occurred two days after the shooting, Epps acted normal. This statement was corroborated during the hearing on the motion by Detective Perry Tate, who was also present during the confession. Detective Tate emphasized that Epps did not act crazy during the interrogation.
*1045 ¶ 8. After Daniel's testimony, the State rested. Epps did not testify. Therefore, the defense called no witnesses and rested. Further facts will be discussed in the analysis section as needed.

ANALYSIS
I. Did the trial court err when it denied Epps's motion for a mental examination?
¶ 9. Epps argues that the trial court erred when it denied his motion for a mental examination. A circuit court judge, if he or she has "reasonable ground to believe that the defendant is incompetent to stand trial, shall order the defendant to submit to a mental examination by some competent psychiatrist . . . in accordance with § 99-13-11. . . ." URCCC 9.06. Mississippi Code Annotated section 99-13-11 (Rev.2007) was promulgated to confirm that a defendant is "mentally capable of standing trial and able to assist his attorney in preparation of his defense." Benish v. State, 733 So.2d 855, 856(¶ 8) (Miss.Ct. App.1999). The defendant bears the burden of "persuad[ing] the trial judge that there is sufficient evidence to warrant a mental examination." Wilson v. State, 755 So.2d 2, 4(¶ 7) (Miss.Ct.App.1999). "When the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, this Court will not overturn that finding unless the finding was manifestly against the overwhelming weight of the evidence." Dunn v. State, 693 So.2d 1333, 1341 (Miss.1997).
¶ 10. In the present case, Epps offered no medical evidence that he was not competent to stand trial. While Epps's mother did testify that Epps has suffered from psychosis, she did not bring any medical records or documentation to the hearing. The hearing also revealed that, despite suffering from psychological ailments for twenty years, Epps was competent enough to assist his previous counsel with his two prior guilty pleas. Furthermore, both Epps and his mother testified that Epps was able to function when he took his medicine, and Epps's mother testified that the Hinds County Detention Center's staff was properly administering Epps's medicine to him at the time of the hearing and before the trial. Thus, we agree with the trial court on this issue and find that the trial judge's decision was not against the overwhelming weight of the evidence.
II. Did the state commit plain error by commenting on the fact that Epps did not testify?
¶ 11. After summarizing the evidence during closing argument, the prosecutor stated "that is the only evidence you have." Next, he described the defendant's closing argument by stating, "[y]ou take away all the evidence like they did, he's not guilty. What you've got to do, you've got to come up with every single piece of evidence in this case because it's all unrefuted. It's unrefuted." Epps argues that these two statements resulted in an improper closing argument because he believes both statements were comments on his failure to testify.
A. Waiver
¶ 12. Epps's attorney did not object to these comments. Epps argues that this does not procedurally bar his appeal. The supreme court, when addressing the same issue, stated, "[a] trial error, however, involving violation of a Constitutional right may reach such serious dimension, however, that this Court is required to address it, though first raised on appeal." Whigham v. State, 611 So.2d 988, 995 (Miss. 1992) (emphasis added). Whigham, however, does not stand for the proposition *1046 that a criminal defendant can never be procedurally barred from arguing that a prosecutor commented on his or her right not to testify. In a case dealing with this issue, the supreme court stated five years after Whigham that "[t]here was no objection by Holland. We hold that the issue is, thus, procedurally barred." Holland v. State, 705 So.2d 307, 344 (¶ 47) (Miss. 1997).
¶ 13. Furthermore, we have stated "the Whigham court did not set aside the procedural bar rule invoked against a convicted individual on appeal where a contemporaneous objection was not lodged at trial. Trull v. State, 811 So.2d 243, 246(¶ 5) (Miss.Ct.App.2000). Rather, the Whigham majority found that on the facts of that case, a reversible constitutional violation occurred." Id. We affirm our prior precedent in Trull and find that Whigham is confined to reversible constitutional violations. The facts in Whigham bear little if any resemblance to the facts in this case. The Whigham court stated:
In this case we do not have either an isolated or ambiguous comments which might be interpreted one way or another, but four separate statements in which the jury was told that the State's witnesses' testimony was "unopposed," "unimpeached," "no evidence whatsoever toward their unreliability," and "unrebutted." We therefore hold that the errors in closing argument reached a Constitutional dimension so egregious that failure on the part of defense counsel to make proper objection either at trial or in his motion for a new trial did not waive the error.
Whigham, 611 So.2d at 996. In this case, we have two separate isolated and ambiguous comments made by the prosecutor during closing argument. We find that these two statements do not reach the constitutional dimensions mentioned in Whigham. Therefore, we find that Whigham does not apply, and Epps is procedurally barred.
B. Substance of Epps's claim
¶ 14. Procedural bar aside, we will also address the merits of Epps's claim. In his argument, Epps further relies on Whigham. Whigham states:
The prosecution is always free to discuss at length the testimony of the State's witnesses and why they are credible. The defendant's failure to testify does not diminish this latitude. Yet, when the defendant is the only person who can rebut the testimony of a State witness, the prosecuting attorney is not free in his argument to also inform the jury that if what the State's witness said was not true, the defendant would, or could have taken the stand and defied it. Because for obvious reason the prosecution cannot make such statement directly, it follows that the prosecution is equally prohibited from doing so indirectly or by implication.
Id. at 995. This case is readily distinguishable from Whigham. In Whigham, the prosecutor's statements were not isolated or ambiguous because the prosecutor made his improper comments throughout the case. Id. at 996. Furthermore, the prosecutor in Whigham specifically referenced certain witnesses' testimony as unrefuted or unimpeached. In our case, the prosecutor made two general statements to the effect that the evidence in this case was unrefuted, and these comments were isolated and general in nature.
¶ 15. We find this case more akin to that of Weathersby v. State, 769 So.2d 857 (Miss.Ct.App.2000). In Weathersby, the defendant argued that the State commented on his failure to testify because the prosecutor during closing argument stated, "there is no defense. There is no evidence *1047 to the contrary." Id. at 861(¶ 16). In Weathersby, we stated that "[a] prosecutor may not, even indirectly, comment adversely on the defendant's failure to testify in his own defense. On the other hand, the court has found that adverse comments on the defendant's failure to present any defense at all are not a prohibited form of argument to the jury." Id. at (¶ 17) (citations omitted). We went on to hold:
the prosecution comment went to the total lack of evidence from the defense to contradict the proof introduced by the prosecution. On the facts of this case, such evidence could have been in the form of testimony from persons other than the defendant  one such example being an alibi witness  and we do not conclude, for that reason, that the prosecution was trying, by innuendo, to stress to the jury that the defendant did not elect to testify in his own defense to deny his involvement in the crime. For that reason, we do not find the comments to be the ground for reversing the convictions in this case.
Id. at (¶ 18).
¶ 16. In this case, the prosecutor was asserting that all of the State's evidence was unrefuted. He did not single out any particular witnesses' testimony that only Epps could rebut. Thus, we conclude that, like the prosecutor in Weathersby, this prosecutor was not trying to stress by innuendo the fact that Epps elected not to testify. In fact, the defense could have refuted the prosecution's evidence with a ballistics expert or an alibi witness. See Logan v. State, 773 So.2d 338, 349 (¶¶ 41-42) (Miss.2000) (describing various types of rebuttal witnesses a criminal defendant can use). Therefore, we find no error.
III. Was Epps's counsel ineffective because they did not pursue an insanity defense or they did not fully develop that Epps was incompetent to stand trial?
¶ 17. Constitutional issues are reviewed de novo. Thoms v. Thoms, 928 So.2d 852, 855(¶ 9) (Miss.2006). To prove ineffective assistance of counsel, Epps must demonstrate that his counsels' performance was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Epps. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990).
¶ 18. To evaluate the deficiency prong of the Strickland analysis:
a court . . . must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.
Strickland, 466 U.S. at 690, 104 S.Ct. 2052. There is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. Id. at 694, 104 S.Ct. 2052. This Court will not second guess counsel's reasonable trial strategy. Hall v. State, 906 So.2d 34, 38(¶ 15) (Miss.Ct.App.2004).
¶ 19. To evaluate prejudice, "the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ross v. *1048 State, 954 So.2d 968, 1004(¶ 78) (Miss. 2007).
A. Insanity defense
¶ 20. Epps argues that his attorneys were ineffective because they failed to properly pursue the insanity defense. During the hearing on Epps's motion for an examination, one of his attorneys stated, "[I have] never seen anyone who more needs treatment and evaluation." He also stated, "we must have a mental examination to present a cogent defense. Otherwise without it we really have nothing to present to the jury." He admitted that "[insanity] is his defense, as [it] has always been, that he was having these problems with his mental illness and that's why this thing occurred, that he did not have the intent to commit this crime because of his mental illness." Epps's attorneys, however, did not file or provide any notice to the State of their intention to use the insanity defense required by the Uniform Rule of Circuit and County Court Practice 9.07.
¶ 21. We find that Epps has established that his counsels' actions were deficient under prong one of Strickland. We cannot say that Epps's attorneys' actions were reasonable. They did not provide notice of their intention to use the insanity defense, but one of Epps's attorneys stated on the record a day before trial that the insanity defense was the only defense they had to present to the jury. We cannot imagine how such actions could fall within the realm of reasonable trial strategy. However, Epps has only passed the first prong of Strickland, and this Court must analyze the second prong.
¶ 22. Next, Epps must prove that his attorneys' actions prejudiced his defense. We have previously stated that "in order to reverse, this Court would have to be reasonably satisfied that, had defense counsel pursued an insanity defense, it would have resulted in [the defendant] being found not guilty by reason of insanity." McLaughlin v. State, 789 So.2d 113, 115(¶ 7) (Miss.Ct.App.2001). Mississippi uses the M'Naghten Rule "to define those instances where a defendant may escape punishment based on his mental incapacity." Id. at (¶ 8). Under M'Naghten, the defense must show that at the time of the crime "the defendant because of diminished or impaired mental functioning was either (a) unable to understand the difference between right and wrong, or (b) was unable to appreciate and comprehend the consequences of his actions." Id. It is well established in Mississippi law that just because a criminal defendant is considered medically insane does not mean that he is M'Naghten insane. Laney v. State, 486 So.2d 1242, 1245 (Miss.1986) (finding that a diagnosis of schizophrenia does not automatically make a defendant M'Naghten insane).
¶ 23. The Mississippi Supreme Court has held that "[p]sychiatric and psychological expert witness testimony, while admissible and indeed quite desirable, is not the last word. Lay testimony has long been recognized as being equally, admissible and useful where the insanity defense is tendered." Groseclose v. State, 440 So.2d 297, 301 (Miss.1983). The supreme court has also found that a criminal defendant's own testimony can support a finding of sanity on appeal. Merrill v. State, 482 So.2d 1147, 1150 (Miss.1986).
¶ 24. We find the case before us to be analogous to the case of Tyler v. State, 618 So.2d 1306 (Miss.1993). In Tyler, the Mississippi Supreme Court denied a criminal defendant's challenge of a jury's determination that he was M'Naghten sane. Id. at 1309. The record revealed that half of the medical experts believed that Tyler knew right from wrong when he killed Singleton, and the other half believed Tyler *1049 fulfilled the criteria of M'Naghten. Id. at 1310. Tyler argued that he had previously been admitted to a mental institution, but the court said it could not rely on this testimony because there were no medical records. Id. at 1311. The court in upholding the conviction relied heavily on non-medical evidence. Id. The court stated, "[n]ext, there is Tyler's act of hiding the murder weapon under the seat of the police car. Only someone with a guilty mind and who knew what he had done was wrong would do such an act." Id. at 1312. The court stated further, "[t]he officers who arrested Tyler and later interviewed him at the police station where he confessed to the murder testified that they had no problem communicating with Tyler in all their dealings with him." Id. Finally, Tyler confessed to another officer that "I'm tired of getting walked on." Id.
¶ 25. In another case similar to the one before us, the defendant, Robert Groseclose, had a history of mental illness and had been hospitalized three times for treatment. Groseclose, 440 So.2d at 298. This mental illness "led to the divorce of Ruth and Robert Groseclose in November of 1980." Id. After the divorce, Robert traveled to Natchez to murder his wife. Robert arrived with a gun and told his wife, "[y]ou're not going to poison my children's minds anymore. I'm going to blow your head off." Id. Robert accidentally killed Ruth's father and was arrested. Id. After the arrest, Robert told a deputy, "I've done what I come to do." Id. at 299. The supreme court found that "having well in mind the testimony of the various lay witnesses . . . there was indeed before the jury an evidentiary basis upon which a verdict of guilty could be based." Id. at 301.
¶ 26. In this case, Epps's mother testified that he had been suffering from the same mental ailment for twenty years. However, Epps had never attacked anybody until he attacked Eubanks. Epps also stated that he understood the wrongfulness of his actions. Epps admitted during his hearing on his motion to suppress that during his confession he stated, "I didn't want to do anything  do nothing to hurt my mom, but I had to do that, everybody have to do that." Epps also admitted that he had discussed his case and the insanity defense with his roommate in jail. On redirect, Epps explained some of his answers that he gave on cross-examination by stating, "I might be kind of off, but I've been on medicine two months now. I can kind of think straight. I know [the prosecutor] is going to try to shoot me through a cross. I'm going to be looking for that." Detective Daniels testified that Epps stated, "[Eubanks] was corrupting my mom's mind. You don't supposed to do that, period. I went and did what I had to do. I shot him." Epps testified that the night before his confession he decided that he better turn himself in to the police.
¶ 27. It is apparent from the above testimony that Epps suffered no prejudice because of his attorneys' actions. He could not fulfill the requirements of M'Naghten because he understood the consequences of his actions when he shot Eubanks. He admitted to Detective Daniels that he shot Eubanks once or twice because Eubanks was "messing with his mother's mind." We find this statement to be similar to the incriminating statement made by the defendant in Groseclose. Thus, Epps knew the consequences of his actions. Also like the defendant in Tyler, Epps understood the difference between right and wrong because he knew that shooting Eubanks would upset his mother, and he hid the gun as he was fleeing Eubanks's house. Further, Epps made the conscious decision to turn himself into the police. Therefore, this Court can only conclude that Epps knew that he committed a crime. We do not deny that Epps *1050 may suffer from some mental illness. However, M'Naghten requires more than a mere diagnosis of mental illness. From the above testimony and evidence, this Court can only conclude that Epps "did not come close to being so mentally deficient as to lack an appreciation of the consequences of his action." McLaughlin, 789 So.2d at 115(¶ 9). After reviewing the record, we are not convinced that Epps would have succeeded if he had properly asserted the insanity defense. Therefore, his attorneys' actions did not prejudice his defense, and Epps cannot fulfill the requirements of Strickland. Thus, we find this issue is without merit.
B. Competency to stand trial
¶ 28. The trial court found, and we agree, that Epps was competent to stand trial. He admitted that before trial he had started to take his medicine again and could now think straight. Furthermore, Epps participated in his defense, made a closing argument, and discussed his case and the insanity defense with his cellmate. Thus, we cannot say that his trial counsel was deficient with regard to this issue; and we, therefore, find this error is without merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Prior to shooting his stepfather, Epps pleaded guilty to two business burglary charges.