GRIFFIS, J„
for the Court:
¶ 1. Eric Roberts appeals his conviction of burglary. On appeal, Roberts argues that: (1) the trial court erred by allowing Roberts’s statement to Officer Michael Hall into evidence; (2) the trial court erred by allowing Roberts’s statements to Detective Jon Traxler into evidence; (3) the prosecutor made an improper closing argument; (4) the trial court erred in denying Roberts’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial; (5) he received ineffective assistance of counsel; and (6) cumulative errors deprived him of his constitutional right to a fair trial. We find no error and affirm.
FACTS
¶ 2. On February 1, 2007, Ledonna Ellis had two girlfriends over to her apartment. The three girls went to a party and were home by midnight. Ellis went to sleep alone in one room, while the other two girls slept in a second bedroom.
¶ 3. At approximately 3:00 a.m., Ellis awoke to a man standing in her bedroom. Her room was dark, so she ran to her bathroom to turn on a light and did not see anyone. She then raced to her kitchen to turn on the light. In the kitchen, she saw the intruder in a crouched position in front of her refrigerator. Ellis ran to the other bedroom, slammed the door, and called 911. The intruder rummaged around the apartment for a few minutes; then he left through the front door.
¶ 4. At approximately 3:30 a.m., Officer Michael Hall responded to a call about a potential burglary. He was given a description — a black male wearing a blue hoodie. Officer Hall arrived at the apartment complex’s parking lot approximately a minute later. Upon arrival, he saw Eric Roberts walking across the parking lot. He called him over and asked him where he was coming from. Roberts responded that he was coming from McDonalds. Officer Hall told Roberts that Roberts fit the description of a suspect that was involved in a burglary. He then patted Roberts down and found an open-bladed knife in Roberts’s pocket. After finding the knife, Officer Hall placed Roberts in the back of his patrol car.
*807 ¶ 5. Officer Hall waited for other officers to arrive to help investigate the burglary. Roberts knocked on the police car’s window to get Officer Hall’s attention. Officer Hall opened the door, and Roberts told the officer: “All right, I just came out of this female’s room. I realized I forgot my phone, so I went back and got it, and I just left.” At that time, Officer Hall read Roberts his Miranda rights.
¶ 6. When they arrived at the police station, Detective Traxler spoke with Roberts and again read Roberts his Miranda rights. Roberts signed a waiver of his Miranda rights and wrote the following statement:
The individual at a party ask[ed] me to walk a girl home from the little party. I walked her home. I overheard her talking over the phone to her roommate, so I walk[ed] out to Ross Street and the officers were there! They informed me that something had happen[ed] that I wasn’t authorized to control “on my own,” so I cooperated with the officers!
I walk[ed] someone home[,] but I was not wearing or fit the description the [officer] said, it may have been a totally difference [sic] place, but I had -been drink[ing], but not driv[ing] after the party!
Detective Traxler then wrote a series of questions for Roberts, and Roberts wrote his answers. The questions and answers are as follows:
Q: Did you know anyone that lives at 105 Ross Blvd.?
A: On my way to Quizno’s. So[,] I stopped at the party[,] but I didn’t know anyone personally.
Q: Do you know the name of the girl you walked home?
A: Don’t know her name. I was drinking, she may have been drinking.
Q: . Do you know what apartment she lives in?
A: Don’t know the apartment number because we w[ere] walking and being loud.
Q: Do you remember what she was wearing?
A: I can’t exactly remember what she was wearing! Was talking and being loud!
Q: How many people were with you when you walked her home?
A: It started as me and two girls! One went to an apartment and the other went to another.
Q: Do you know the other girl[’]s name and what she was wearing?
A: No.
Q: Do you know what her apartment [number] is?
A: No sir.
Q: Did one of the girls ask you to come in her apartment?
A: No, but one informed me that there were blankets and you [sic] could sleep on the floor.
Q: How did you get in the apartment?
A: I walk[ed] through a door “drunk” with the next male’s so[-]called girlfriend!
Q: What do you mean the next male’s so[-]called girlfriend?
A: Not meaning the word “drunk” but she possibly could have been involved in [a] relationship because she told me she had blankets!
Q: What did she do when she went in the apartment?
A: She was quiet, I just left, I realized] my phone was drop[ped] on the floor with blankets. Went back th[ere] got the phone off the floor. Lockfed] them in by twisting the *808 knob and the[n] I talk[ed] to officers.
[[Image here]]
Did you go in her bedroom? O’
Whe[n] I left, I didn’t go into the bedroomf.] I yelled, I’m leaving. <d
Did you go in the kitchen? <©
I’m unsure where the kitchen is! But, no. t>
Did you lock the door when you left? <©
A: After I walked back and yelled where is my phone[.] I lock[ed] the door behind me!
Q: Was there anyone else at the apartment?
A: I’m not sure!
¶ 7. Roberts was charged pursuant to Mississippi Code Annotated section 97-17-23(1) (Supp.2009), which provides:
Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.
¶ 8. A jury found Roberts guilty of the charge. Roberts was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended, twenty years to serve, and five years of post-release supervision. Roberts’s motion for judgment notwithstanding the verdict or, alternatively, a new trial was denied.
ANALYSIS

1. Whether the trial court erred in allowing Roberts’s statements made to Officer Hall into evidence.

¶ 9. Roberts claims that his statements to Officer Hall were involuntary because he was subject to custodial interrogation without proper Miranda warnings. The State responds that Roberts’s statements were not made in violation of Roberts’s Miranda rights because Roberts made the statements voluntarily.
¶ 10. Miranda warnings are needed once the suspect is subject to “custodial interrogation.” Compton v. State, 460 So.2d 847, 849 (Miss.1984). To be subject to custodial interrogation, the suspect must be both in custody and undergoing interrogation. A suspect is in custody when his right to freely leave has been restricted. Roberts v. State, 301 So.2d 859, 861 (Miss.1974). The accused is subject to interrogation when he is questioned by the police or the functional equivalent. Pierre v. State, 607 So.2d 43, 52 (Miss.1992). The functional equivalent is any sort of activity that the police reasonably believe will produce an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
¶ 11. A pretrial hearing was held to determine whether Roberts’s statements were voluntary. Officer Hall testified that he asked Roberts one question — “where are you coming from?” Thereafter, Officer Hall put Roberts in the police car. A few minutes later, Roberts knocked on the window to get Officer Hall’s attention. Officer Hall opened the door, and Roberts said: “I was in this female’s room that I didn’t know, but she asked me why I was there, so I just left.” Officer Hall immediately read Roberts his Miranda rights.
*809 ¶ 12. The trial court found that Roberts’s statements were voluntarily made. Upon review of the record, it is clear that Roberts was in custody when he was in the back of the police car and told Officer Hall that he had been in the apartment. However, Roberts was not subject to custodial interrogation or the functional equivalent. Instead, Roberts actively sought Officer Hall’s attention by knocking on the window. Roberts made the statements without Officer Hall asking him a question. Because his statements were not the product of custodial interrogation and were made voluntarily, we find that the trial court did not abuse its discretion in admitting Roberts’s statements to Officer Hall into evidence. This issue is without merit.

2. Whether the trial court erred in admitting Roberts’s statements made to Detective Traxler at the police station.

¶ 13. Roberts argues that his statements to Detective Traxler were involuntary and that they should have been suppressed because: (1) he was intoxicated; (2) Detective Traxler threatened him; and (3) Detective Traxler failed to record his statements with a video camera or audio recorder. After the pretrial hearing, the trial court denied Roberts’s motion to suppress his statements to Detective Traxler.
¶ 14. The circuit judge “enjoys a considerable amount of discretion as to the relevancy and admissibility of evidence.” Shearer v. State, 423 So.2d 824, 826 (Miss.1982). We will not reverse the ruling of a circuit judge unless he abused his discretion and caused the accused to experience prejudice. Id. The Mississippi Supreme Court has held:
Regardless of the number of appellate judges who now, or in the future, review this case, the trial judge in this case is the only one amongst the members of the judiciary who will ever have the opportunity to not only hear the testimony, but to also observe the demeanor of the witnesses as they testified at the suppression hearing. We thus afford the appropriate deference to the trial judge since [he] was the ultimate fact-finder based on disputed testimony offered at the suppression hearing.
Glasper v. State, 914 So.2d 708, 720 (¶ 28) (Miss.2005).
¶ 15. In O’Halloran v. State, 731 So.2d 565, 571 (¶ 19) (Miss.1999), a criminal defendant argued that his confession was involuntary because he was intoxicated. The supreme court held:
The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circumstances. Further, where there is conflicting evidence on a confession’s admissibility, this Court will not disturb the court’s findings “unless it appears clearly contrary to the overwhelming weight of the evidence.” No one factor is dispositive in the totality of circumstances test. “Indeed, intoxication or sickness does not automatically render a confession involuntary. The admissibility of a confession depends upon the degree of intoxication.”
Id. at (¶ 18) (internal citations omitted). The court held that the trial court’s order denying William Joseph O’Halloraris motion to suppress his statement was not against the overwhelming weight of the evidence. Id. at 571 (¶ 20). Specifically, the court found that three officers testified that O’Halloran appeared sober and did not smell of alcohol when he gave his incriminating statements. Id. at (¶ 19). The court also concluded that O’Halloran had to wait approximately an hour and a half before he was questioned. Id.
*810 ¶ 16. Like the officers in O’Hallo-ran, both Officer Hall and Detective Trax-ler testified that: Roberts did not smell of alcohol; he was coherent; and he appeared sober when he gave his statements. Also, the trial court concluded that Roberts testified clearly about the night’s events and that the defense offered no proof about Roberts being drunk, except through Roberts’s unsubstantiated testimony. After applying O’Halloran to the facts of this case, no reversible error exists because the trial court’s decision was not against the overwhelming weight of the evidence.
¶ 17. Roberts also claims that Detective Traxler threatened that he would charge Roberts with burglary if Roberts did not give a statement at the police station. In Carley v. State, 739 So.2d 1046, 1050 (¶ 16) (Miss.Ct.App.1999) (citations omitted), we noted that:
The privilege against self-incrimination secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and by Article 3, § 26 of the Mississippi Constitution renders an involuntary confession inadmissible. When the volun-tariness of a confession is put in issue, the burden falls on the State to prove the voluntariness of the confession beyond a reasonable doubt. The State meets that burden by offering the testimony of those individuals having knowledge of the facts that the confession was given without threats, coercion, or offer of reward.
¶ 18. Detective Traxler testified that he did not threaten Roberts. Officer Hall and Detective Traxler each read Roberts his Miranda rights. Roberts signed a waiver of his Miranda rights, and in his own handwriting, Roberts wrote his statement. Roberts offered only assertions and no evidence showing that he was threatened. In light of the evidence, we find that the State proved the voluntariness of Roberts’s statement beyond a reasonable doubt.
¶ 19. Finally, Roberts contends that his statement was not properly recorded and that law enforcement must record confessions using video cameras or audio recorders. This equipment may assist the trial court’s fact finding and may prohibit many frivolous appeals. However, the use of such equipment is not presently required under Mississippi law, and this Court does not have the authority to mandate such a change. See Dobbs v. State, 726 So.2d 1267, 1270 (¶ 7) (Miss.Ct.App.1998). Therefore, this is an issue better left to the Mississippi Legislature or the Mississippi Supreme Court.
¶ 20. We find that the trial court’s determination that Roberts’s confession was voluntary is not against the overwhelming weight of the evidence. Therefore, this issue has no merit.

3. Whether the prosecutor made improper dosing arguments.

¶21. In closing argument, the prosecutor stated: “They want answers; they can ask them. They have the subpoena. They can subpoena them and have them here. They don’t want to answer.” Roberts’s counsel objected and asked for a mistrial. Roberts argues that the prosecutor’s closing argument was improper because he commented on Roberts’s failure to testify.
¶ 22. In Weathersby v. State, 769 So.2d 857, 861 (¶ 16) (Miss.Ct.App.2000), the defendant argued that the prosecution commented on his failure to testify because the prosecutor during closing argument stated, “there is no defense. There is no evidence to the contrary.” In Weathersby, we stated that “a prosecutor may not, even indirectly, comment adversely on the defen *811 dant’s failure to testify in his own defense. [However], the court has found that adverse comments on the defendant’s failure to present any defense at all are not a prohibited form of argument to the jury.” Id. at (¶ 17) (citations omitted). We went on to hold:
the prosecution[’s] comment went to the total lack of evidence from the defense to contradict the proof introduced by the prosecution. On the facts of this case, such evidence could have been in the form of testimony from persons other than the defendant — one such example being an alibi witness — and we do not conclude, for that reason, that the prosecution was trying, by innuendo, to stress to the jury that the defendant did not elect to testify in his own defense to deny his involvement in the crime. For that reason, we do not find the comments to be the ground for reversing the convictions in this case.
Id. at (¶ 18).
¶ 28. Here, the prosecutor commented on the total lack of evidence presented by the defense to contradict the proof introduced by the prosecution. Defense counsel could have introduced evidence in the form of testimony other than testimony from Roberts — one example being an alibi witness. The prosecutor’s comments on Roberts’s failure to provide any evidence to contradict the prosecution’s evidence were not prohibited. Accordingly, we do not find the prosecutor’s comments to be grounds for reversing the conviction in this case. This issue is without merit.

I. Whether the trial court erred in denying Roberts’s motion for a judgment notwithstanding the verdict or, in the alternative, a new trial.

¶ 24. Roberts argues that the State failed to prove all elements of the charge of burglary. Specifically, he claims that there was no direct evidence showing that Roberts had the intent to commit a crime inside Ellis’s apartment.
¶ 25. On a motion for a new trial, we determine whether the jury verdict is against the overwhelming weight of the evidence. Montana v. State, 822 So.2d 954, 967 (¶ 61) (Miss.2002). There, the court concluded that:
this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Id. at 967-68 (¶ 61). Finally, it must also be remembered that it is the duty of the jury to assess the credibility of witnesses. Smith v. State, 821 So.2d 908, 910 (¶4) (Miss.Ct.App.2002).
¶26. Burglary of a dwelling requires two elements: (a) unlawful breaking and entering, and (b) intent to commit a crime therein. Moton v. State, 999 So.2d 1287, 1292 (¶ 16) (Miss.Ct.App.2009) (citations omitted). Here, the breaking and entering was proven through the three girls’ testimonies. Roberts was caught inside Ellis’s apartment. All three girls testified that: none of them went to the party that Roberts claimed to have been at; the doors were closed before they went to bed; they were the only people in the apartment before they went to bed; no one invited anyone else to stay; and no one knew Roberts. Roberts told Officer Hall that he was in a girl’s apartment and that he did not know the girl. Then, Roberts told Detective Traxler that he walked home with the girls after a party, and one *812 girl allowed him to stay in the apartment that night.
¶ 27. Nevertheless, since no item of value from the apartment was found on Roberts, he claims that the State failed to prove intent. When a defendant is charged with burglary:
The rule requiring the State to set out the elements of the crime “intended” to have been committed for the purpose of identifying the crime with certainty, does not mean, however, that the State is required to prove each element of the “intended crime” with the same particularity as is required when a defendant is charged only with the crime intended.
Newburn v. State, 205 So.2d 260, 266 (Miss.1967).
¶ 28. “[A]ll the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case.” Campbell v. State, 278 So.2d 420, 423 (Miss.1973). Thus, intent may be proven by circumstantial evidence. Stinson v. State, 375 So.2d 235, 236 (Miss.1979). The supreme court has held:
Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night accompanied by flight when discovered, even though nothing has been taken.
Brown v. State, 799 So.2d 870, 872 (¶ 8) (Miss.2001) (citations omitted). Also, “[Un-tent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. A defendant’s intention is manifested largely by the things he does.” Newburn, 205 So.2d at 265.
¶ 29. It was the jury’s duty to assess the credibility of each witness and to draw its own conclusions from the circumstantial evidence. In light of the witnesses’ testimonies and evidence presented, the logical inference is that Roberts entered Ellis’s apartment with the intent to steal. The jury’s finding that Roberts had the intent to commit a crime once inside Ellis’s apartment is not against the overwhelming weight of evidence. Accordingly, this issue is without merit.

5. Whether Roberts was denied effective assistance of counsel.

¶ 30. To prove ineffective assistance of counsel, Roberts must show that: (1) his counsel’s performance was deficient, and (2) this deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Roberts to show both prongs. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052.
¶ 31. Furthermore, the merits of an ineffective-assistance-of-counsel claim on direct appeal should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appel *813 late court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Id. Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 32. Roberts asserts that his counsel was ineffective due to his failure to present evidence during trial of Roberts’s mental illness. Roberts claims that testimony and evidence that he was a schizophrenic and had delusions of grandeur would have entitled him to a defense of insanity. He contends that his counsel did not bother looking at his medical records until the day before his sentencing.
¶ 33. It is unclear from the record before us that his assertions amount to a deficiency of counsel’s performance as Roberts claims. The decision of whether or not to use defendant’s medical history as part of the defense falls under the ambit of trial strategy, and this Court will only under exceptional circumstances second guess counsel on matters of trial strategy.
¶ 34. Further, Roberts has not proven that the outcome of the trial was prejudiced by his counsel’s failure to introduce evidence of his insanity, especially in light of the overwhelming weight of evidence against him, including Roberts’s own statement that he was in the apartment and the girls’ testimonies.
¶ 35. We find that the record before us on appeal is insufficient to affirmatively show ineffective assistance of counsel of constitutional dimensions. As such, we deny relief on this issue without prejudice so that Roberts may present an ineffective-assistance-of-counsel claim in a motion for post-conviction collateral relief, if he so chooses.

6. Whether cumulative error deprived Roberts of his constitutional right to a fair trial.

¶ 36. Finally, Roberts argues that this Court should grant his requested relief based on the cumulative errors committed at trial. However, we have found that all of Roberts’s assignments of error are without merit. “As there was no reversible error in any part, so there is no reversible error to the whole.” McFee v. State, 511 So.2d 130, 136 (Miss.1987). Accordingly, this issue is also without merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF BURGLARY OF AN OCCUPIED DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED, TWENTY YEARS TO SERVE, AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. IRVING, J., CONCURS IN RESULT ONLY.